# Hicks v. Commonwealth.

Oct. 6, 1942.

Jay H. Taylor and W. L. Hammond for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant, Jim Hicks, has been convicted of the crime of willful murder, and his punishment fixed at life imprisonment. Three grounds are relied upon for reversal of the judgment: (1) The verdict is excessive and not sustained by the evidence; (2) incompetent evidence was admitted over appellant's objection; and (3) the instruction on willful murder was not authorized by the evidence.

Appellant stabbed and killed John Mullins on a Sunday afternoon between 5 and 6 p. m.  Hicks and Mul-

lins were close neighbors, and lived in Low Ash, a small settlement in Bell county. Hicks lived next door to his mother, whose house sat back 43 feet from the road. The killing occurred at the fence in front of her house. On the morning of the killing two brothers of appellant's wife, who lived in Harlan, Kentucky, appeared at Low Ash and later took their sister to Harlan. They had received a telegram, unsigned, advising them to come to Low Ash and take their sister to their home. Appellant immediately began an investigation to ascertain the identity of the sender of the telegram. Apparently he suspected some member of the Mullins family. Before his wife had left his home he met May Mullins, 16-year-old daughter of the deceased, and, according to her, accused her of sending the telegram. She denied any knowledge of the telegram, but, according to her testimony, appellant cursed and threatened to slap her. She reported this conversation to her mother. The deceased, John Mullins, and his 10-year-old son, Ray Mullins, returned to their home late in the afternoon from a hunting trip. According to the evidence for the Commonwealth, John Mullins, after the guns had been put away, started to his garden, which was located not far from the Hicks home, to get some corn. Ray Mullins began rolling a hoop along the road in front of his home. Ray Mullins testified that he was standing by a sycamore tree and saw appellant standing in the door of Mrs. Hicks' home as Mullins walked down the road. He testified as follows: "Jim jumped out the door facing and run down there and hit him, and I rolled my casing up a piece and something attracted my attention and I looked back and saw blood coming over his shirt." He further testified that his father did not knock Hicks down as claimed by Hicks nor did he cross over the fence into the Hicks yard or pick up a club. After he was stabbed he walked back up the road toward his home, staggered, and fell. When the neighbors reached him he was dead. He had been stabbed in the left side or shoulder. Appellant testified that the deceased came to the fence in front of the Hicks house and called him and appellant walked down to the fence, which was an old wire fence with a few poles or rails nailed on it. Mullins accused him of slapping May Mullins earlier in the day, which appellant denied. Mullins then struck him with his fist, knocking him down. Mullins then "jumped across the fence and grabbed up a club" and

appellant "straightened up and hit him with a knife." Roy Hicks, a brother of appellant, who lived about 60 feet from the scene of the encounter, testified that he was in his front yard cutting wood and heard the deceased call appellant. He did not see the difficulty.

The foregoing is all the pertinent evidence in regard to what occurred at the time of the killing. If Ray Mullins' testimony is true, appellant stabbed and killed the deceased without provocation and the crime was murder. The deceased was unarmed except for a small pocketknife which was found in his pocket closed, and appellant does not claim he attempted to use it. No club was found at the place of the encounter and none was produced at the trial. The testimony of appellant and Ray Mullins was conflicting, but the credibility of the witnesses was a question to be determined by the jury. The verdict is severe, but there was evidence to sustain the Commonwealth's theory of the case and the punishment is not excessive since the jury fixed it within the limits prescribed by law. Combs v. Commonwealth, 273 Ky. 787, 117 S. W. (2d) 1000.

What has been said in regard to ground 1 disposes also of ground 3. The Commonwealth introduced a map prepared by T. J. Ingram, a civil engineer. The map shows the location of the roads in the vicinity of the killing, the residences of Mrs. Hicks and Roy Hicks, the sycamore tree where Ray Mullins was standing, and the point where the deceased was stabbed. Ingram testified that there was no obstruction to the view between the sycamore tree and the point where the killing occurred. The distance between these points is 171 feet. It is not claimed that the map is incorrect in its locations and distances, but it is argued that it should have been more comprehensive and should have shown other objects in the neighborhood, including the Mullins home which was beyond the limits of the map prepared by Ingram. This contention is without merit. Furthermore, no objection to the introduction of the map was made.

The widow of the deceased was introduced as a witness by the Commonwealth, and the first question asked her was: "How many children have you?" The defendant objected. The court failed to rule on the objection, and the witness answered: "Ten." No exception was taken. An error in the admission of testimony may not be considered by us unless an objection is made,

484

a ruling on the objection obtained, and, if the ruling is adverse to the objector, an exception taken. Otherwise the error is waived. Gus Datillo Fruit Company v. Louisville & N. R. Co., 238 Ky. 322, 37 S. W. (2d) 856; Jones v. Hicks, 268 Ky. 38, 103 S. W. (2d) 702. Even had the point been preserved and the error brought before us for consideration, it alone would not authorize a reversal of the judgment. The question should not have been asked and we have frequently criticized Commonwealth attorneys for indulging in such practice, but as said in Campbell v. Commonwealth, 289 Ky. 34, 157 S. W. (2d) 729, 731:

> "Of course, this testimony was incompetent and should not have been admitted as it had no bearing on the circumstances of the homicide, but we are unwilling to believe that the jury, because of the fact thus adduced, reached a verdict it would otherwise not have reached."

The judgment is affirmed.