STATE v. TOM BURNS, Appellant.—No. 38412.—172 S. W. (2d) 259.

Division Two, June 7, 1943.

*L. L. Collins* for appellant.

166

*Roy McKittrick,* Attorney General, and *William C. Blair,* Assistant Attorney General, for respondent.

ELLISON, J.—The appellant, Tom Burns, was convicted in the circuit court of Greene county of a violation of Sec. 12294, R. S. 1939, Mo. R. S. A., sec. 12294, in signing a name other than his own to an initiative petition proposing an amendment of Art. IV of the State Constitution by striking out twenty-five sections and inserting sixteen new sections in lieu thereof. The general purpose of the amendment was to substitute a unicameral General Assembly for the present Senate and House of Representatives. The jury assessed his punishment at imprisonment in the penitentiary for two years. Appellant's brief makes ten assignments of error. We shall consider such of these as merit discussion; and adopt, without quotation marks, appellant's statement of the general facts. Other detailed facts will be stated as necessary in connection with each assignment.

On or about the 19th day of June, 1942, the Missouri Committee for a one-house legislature in the city of St. Louis, employed the appellant and one Erwin Greenhaw to secure names on initiative petitions. Appellant and said Greenhaw were to and did receive compensation therefor; that upon such employment they received from this Committee a large number of initiative petitions and returned to Springfield from St. Louis with said petitions for the purpose of securing names thereon.

That appellant went to the Chamber of Commerce in Springfield, Missouri, and secured a large number of city telephone directories of many cities and towns in south Missouri; that said appellant and Greenhaw employed a dozen or more girls and women and paid them to work in the basement of appellant's home copying names from these directories on the initiative petitions, and some of the names written on the initiative petitions purporting to be signers thereof were made up by these girls and women without getting them out of the directories; that in this manner something near 38,000 names purporting to be signers of these petitions were secured and were taken by appellant and said Greenhaw to St. Louis, Missouri, and delivered to the Missouri Committee for a one-house legislature and that for their services in procuring names they received from this Committee together something like $2,100.00. These petitions were then taken by the aforesaid Committee to the office of the Secretary of State for filing and after filed were later withdrawn and that proposed initiative amendment did not appear on the ballot at the general election in 1942.

At the close of the State's case the defendant offered no evidence whatever but filed a demurrer to the State's evidence which was by the trial court overruled.

Appellant's main assignments of error attack the State's information from various angles. Some of these contentions are rather hazy. To begin with he expresses "serious doubt" whether Sec. 12294, supra, is constitutional, because the title of the legislative bill by which it and other related statutes were enacted (Laws Mo., 1909, p. 554) "nowhere provides who may sign or who may not sign such a petition, or the qualifications of the signer, hence this statute is broader than the title;" also because the statute by its terms would forbid one person from signing the name of another in good faith when that other for some reason could not write. This contention is without merit for several reasons: (1) no such objection was made at the trial; (2) the point was not mentioned or preserved in the motion for new trial; (3) the constitutional provision supposed to have been violated is not pointed out; (4) the expression of mere *doubt* in the brief here as to the constitutionality of the statute did not raise that issue squarely or directly, as so many decisions have held must be done.

Another assignment assails the information on the ground that it failed to apprise the appellant of the nature of the accusation against him—this because it did not [263] *set out* the alleged initiative petition, but merely attempted to plead its legal effect by stating conclusions of law and fact; and in one instance alleged facts "clear outside of and beyond the statute." Omitting the commencement, the charging part of the information was that the appellant:

"did then and there wilfully, knowingly, unlawfully and feloniously sign the name of Paul Smith to a certain initiative petition addressed to and thereafter offered for filing and filed with Dwight H. Brown, Secretary of and for the State of Missouri, which initiative petition petitioned the said Secretary of State to submit to the voters of the State of Missouri for their approval or rejection at the regular general election to be held on the 3rd day of November, A. D. 1942, a proposed constitutional amendment which by its terms would, if enacted, repeal Section 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 16, 17, 18, 20, 21, 22, 23, 30, 31, 32, 38, 39, 40, and 42 of Article IV of the Constitution of Missouri and enect in the stead of said repealed Sections new sections numbered 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 11-A, 11-B, 11-C, 11-D, and 11-E, as set forth in said petition, which said new sections provided for a unicameral legislature for the State of Missouri; the said Paul Smith being then and there a name other then the name of the said Tom Burns, he, the said Tom Burns, knowingly not having the consent, permission, or authority of him, the said Paul Smith, to sign his, the said Paul Smith's name to the said initiative petition, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State."

The specific complaints in the appellant's brief are that: (1) the following two allegations in the information were mere conclusions; (a) the charge that the document to which appellant signed the

name of Paul Smith *was* "an initiative petition"; (b) the charge
that the initiative petition proposed (italics ours) "a *constitutional
amendment* which, if enacted, *would repeal*" the enumerated sections
of Art. IV of the Constitution; (2) the concluding part of the infor-
mation, charging the appellant signed the name of Paul Smith to the
petition "knowingly not having the consent, permission, or authority
of him, the said Paul Smith, to sign his, the said Paul Smith's, name
to the said initiative petition," went clear outside the statute, Sec.
12294, supra.

On point 1, appellant cites State v. Hayward, 83 Mo. 299, 304, and
State v. Wade, 267 Mo. 249, 257, 183 S. W. 598, 600. But we are
unable to see that these cases are applicable. The Hayward case was a
prosecution for criminal libel. The information charged the defend-
ants with printing, publishing and circulating certain "obscene, lewd
and licentious pamphlets entitled, 'The case of C. O. Godfrey.'" The
information did not further set out or describe the obscene matter,
or plead any excuse for failing to do so. The decision held that "where
a statute so far individuates the offense that the offender has proper
notice," a charge in the language of the statute will be sufficient;
but that where the crime alleged consists of words written or spoken,
(italics ours) "*the words are the facts which constitute the crime,*"
and hence must be set out. In the Wade case the charge was setting
up and keeping a gambling device called a "crap-table." The statute
denounced the keeping of certain specified gaming devices (not men-
tioning "crap tables") and then continued generally "or any kind of
gambling table" etc. The decision held the rule of *ejusdem generis*
applied, and that the information should have described the "crap-
table" sufficiently to show it fell within the class of gambling devices
under the statutory inhibition.

In the instant case, the gist of the offense denounced by Sec. 12294,
supra, undoubtedly is the *act* of the accused in signing a name other
than his own to a referendum or initiative petition: the technical
sufficiency of the petition is unimportant. Similarly a prosecution
for forgery will lie if the instrument involved have *apparent*
legal efficacy, and does not depend on its actual legal sufficiency.[1]
Furthermore Secs. 12286 and 12287, R. S. 1939, Mo. R. S. A., secs.
12286, 12287, merely prescribe "substantially" the forms of such
referendum and initiative petitions; and Sec. 12288 further provides
that these forms "are not made mandatory, and if substantially fol-
lowed in any petition it shall be sufficient, disregarding clerical and
merely technical errors." The initiative [264] petition in the instant
case is long and need not be set out here, though its form and contents
will be considered later. All we need say is that we think the informa-

---

[1] 26 C. J., secs. 20, 24, 28, 29, 30, pp. 906, 907-11; 23 Am. Dec., sec. 25,
p. 686, sec. 28, p. 687; State v. Stegner, 276 Mo. 427, 435, 207 S. W. 826,
829; State v. Sharpless, 212 Mo. 176, 194, 111 S. W. 69, 74(2).

tion, by merely alleging the appellant signed the name Paul Smith "to a certain initiative petition" (without setting it out), did not charge as a legal conclusion that the instrument *was* an initiative petition; but only that in substance, form and intent it was such a petition. We think this was sufficient to advise the appellant of the nature of the accusation against him. Neither did the information charge as a matter of law that the proposed amendment *would be* a constitutional amendment which *would if enacted* repeal other designated provisions of the constitution. On the contrary it alleged the petition requested the submission of a *proposed* constitutional amendment, which *by its terms* would, if enacted, repeal the other designated constitutional provisions, all of which was true.

The second point under this assignment is that the information "went clear outside" the statute, Sec. 12294, supra, in alleging that appellant knowlingly signed the name Paul Smith to the initiative petition without having the consent, permission or authority of Paul Smith so to do. We understand this contention is based on the theory that the statute in terms is unqualified and broadly makes it a crime for any person to sign any name other than his own to such petitions, regardless of whether or not he did so knowingly without the consent or permission of that other person. Sec. 655, R. S. 1939, Mo. R. S. A., sec. 655, prescribing rules for "the construction of all statutes of this state," provides that "where the written signature of any person is required, the proper handwriting of such person, or his mark, shall be intended." But whether this statute has any bearing on the meaning of Secs. 12287, 12288 and 12294, supra; or whether one person may authoritatively direct another to affix his signature to such petitions [see Kaesser v. Becker, 295 Mo. 93, 115, 243 S. W. 346, 351(6), and Porter v. R. J. Boyd Paving & Const. Co., 214 Mo. 1, 11, 112 S. W. 235, 238]; we need not stop to inquire. For no such contention of fact was made in the case; and furthermore, if Sec. 12294 has the rigid meaning appellant gives it, the foregoing allegations in the information were mere surplusage. On that theory they did not go "clear outside" the statute but clear inside it.

The next group of assignments contend that on the merits the alleged initiative petition was *not* an initiative petition in law or fact. A part of the contentions here made seem to be directed to the point that the information based on the petition was insufficient for that reason, and did not charge a crime. Others count on error in the admission of the petition in evidence for the same reason. We treat these assignments together.

As will be remembered, the information alleged that the proposed amendment embodied in the initiative petition would by its terms repeal twenty-five specified sections of Article IV of the Constitution, including Sec. 1 thereof; and would substitute sixteen specified new sections, these providing for a unicameral or one house legislative

body. And it is a fact that Section A of the proposed amendment did so provide. With two immaterial exceptions the twenty-five sections proposed to be repealed have been a part of the present Constitution ever since its adoption in 1875. All of them in one way or another provide for or contemplate a two house General Assembly—a Senate and House of Representatives; for districts from which the respective legislators shall be elected; for their compensation; and for the. organization, rules, legislative procedure and time of meeting and adjournment of the two bodies.

But neither the information, the initiative petition nor the proposed amendment refer in any way to Sec. 57, Art. IV of the Constitution, which had been adopted as an amendment in 1908, introducing the initiative and referendum into our basic law. The opening lines of this Sec. 57, Art. IV, substantially reiterate the provisions of Sec. 1, Art. IV, by specifically providing that "The legislative authority of the State shall be vested in a legislative assembly, consisting of a senate and house of representatives," thereby continuing the bicameral system of legislation (but with a specific reservation to the people of the power of proposing and rejecting laws and Constitutional amendments by the initiative and referendum). · Appellant's brief also cites eight other cognate sections of the Constitution which clearly contemplate a two house General Assembly, namely, Sec. 37, Art. IV, and Secs 3, 12, 14, 15, 17, [265] 18 and 25, Art. V, all of which were likewise ignored by the information, initiative petition and proposed amendment.

Appellant reasons that Sec. 1, Art. IV, supra, was superseded by the subsequently adopted Sec. 57, Art. IV, and consequently became a "dead letter" or was repealed by necessary implication [which view finds support in· State ex rel. Gordon v. Becker, 339 Mo. 1053, 1060, 49 S. W. (2d) 146, 148(3).] He therefore asserts the proposed amendment here involved did a vain and useless thing in attempting to repeal Sec. 1, Art. IV, because it had already been repealed and supplanted by Sec. 57, Art. IV, which latter still provided for a two house assembly and was not even mentioned. But from there on appellant's argument is inconsistent. He contends that since the instant proposed amendment purports to repeal only the twenty-five sections enumerated therein, it leaves *unaffected* the nine ignored sections referred to in this and the last paragraph; and inasmuch as these call for or contemplate a bicameral assembly whereas the sixteen new sections provided for a unicameral assembly, therefore there is repugnancy between the two and the proposed amendment is void. ·
On this point two cases are cited: State ex rel. Wagner v. Patterson, 207 Mo. 129, 143-4, 105 S. W. 1048, 1052, and Moore v. Brown, 350 Mo. 256, 165 S. W. (2d) 657.

Appellant's reasoning is faulty. It concedes Sec. 57, Art. IV, though silent as to Sec. 1 of the same Article, nevertheless repealed

the latter by necessary implication; and yet argues that said Sec. 57 and the eight other ignored but cognate and inconsistent sections would not be similarly repealed by the subsequently proposed unicameral amendment. Of course the Wagner and Moore cases do not support that contention. What the Wagner case holds is (syllabus 5 and italics ours) that "the omission of certain sections of an existing law from a revised bill does not repeal those sections, if they and the revised bill are *not* inconsistent or repugnant." And conversely, the Moore case holds [165 S. W. (2d) l. c. 663(10)] that existing constitutional provisions may be repealed by implication by a later initiative amendment where there *is* irreconcilable repugnance between the two. From this it must follow that if the nine ignored sections are repugnant to the sixteen new sections in the proposed amendment, the latter would repeal the former.

Neither does the Moore case support appellant on the other point to which it is cited. Appellant says the ruling in that decision makes the initiative petition here "utterly void" because both the petition and the proposed unicameral amendment embodied therein fail to set out said nine cognate but inconsistent constitutional provisions. The case does not so hold. The point decided [165 S. W. (2d) l. c. 661 (4), 662-3 (4, 9)] was that under Sec. 57, Art. IV of the Constitution, and Secs. 12286-12295, R. S. 1939, Mo. R. S. A., secs. 12286-12295, enacted pursuant thereto, a proposed amendment by the initiative must disclose what integrally related provisions of the Constitution it is changing, and that the initiative petition will be "legally insufficient" if that showing is not made.

But the Moore opinion did not say the petition would be *utterly void* on such failure. On the contrary it ruled the requirement is only *procedural,* not substantive, and would be waived by a failure to invoke injunctive relief against the Secretary of State if he accepts and files the petition, as provided in Sec. 12289, supra. In other words, if the petition were not challenged on that ground and were submitted to vote and adopted, the amendment would be valid (as regards that point) notwithstanding the legal insufficiency of the petition. This being true, it cannot be denied that the initiative petition did have efficacy in the absence of successful challenge. There is no showing that the initiative petition in this case was ever challenged by the Secretary of State or anyone else in court or elsewhere on the ground under discussion now. To the contrary the record discloses that it was *withdrawn* by its sponsors long before the election, when the question about the *spurious signatures* was raised. So we are unable to uphold on the grounds urged appellant's contention that the initiative petition was not such in law or fact.

Other constitutional questions raised are that the initiative petition and proposed amendment embodied therein were fatally defective: (1) because the proposed amendment was legislative and not

constitutional in character, citing State ex rel. Halliburton v. Roach, 230 Mo. 408, 130 S. W. 689, 139 Am. St. Rep. 629(2); (2) the title of the amendment contained only one subject, namely, ''providing for a single or one house legislative body,'' when in fact the amendment contained a number of [266] different subjects, only one of which was clearly expressed in its said title, in violation of Sec. 28, Art. IV and Sec. 2, Art. XV of the Constitution; (3) the initiative petition failed to disclose on its face that the various petitions purportedly or actually circulated altogether had been signed by five per cent. of the legal voters in each of at least two-thirds of the congressional districts of the State, as required by Sec. 57, Art. IV of the Constitution and Sec. 12287 of the Statutes, supra.

We cannot uphold these contentions. The first two of them raise questions of *substantive* constitutional invalidity of the proposed amendment. And it was expressly ruled in the Moore case, supra [165 S. W. (2d) l. c. 659-660, 662 (1, 2, 9)] that the injunctive procedure authorized by Sec. 12289, supra, will not reach substantive defects in the proposed amendment, but is preliminary and goes only to procedural errors in proposing it. Furthermore, in the Moore case we did not follow or base our ruling on the holding in the Halliburton case that a proposed amendment of the Constitution will itself be unconstitutional if it is ''legislative'' in character. But aside from this, we hold the fact that the proposed amendment would or might be declared unconstitutional in case of its adoption, is no defense to the crime denounced by Sec. 12294, supra.

Regarding the third contention, that the initiative petition failed to show all the petitions taken together had been signed by 5% of the legal voters in each of at least 2/3 of the Congressional districts of the state. While Sec. 57, Art. IV of the Constitution and Sec. 12287, supra, do make that requirement, yet there is nothing in either of them requiring a recital to that effect in each petition. Indeed, the meaning and intent of the two provisions appear to be to the contrary. The signers of the numerous petitions could not possibly know in advance what the total number and distribution of signatures would be. That is a matter for the Secretary of State to determine preliminarily or prima facie when the petitions are offered for filing, and may be judicially determined in the mandamus or injunctive proceedings authorized by Sec. 12289, supra. Kaesser v. Becker, supra, 295 Mo. l. c. 110(IV), 243 S. W. l. c. 350(2).

In addition to this, the information and initiative petition are assailed on statutory grounds. The first contention is that the information failed to allege the initiative petition was filed in the presence of the Governor, as required by Sec. 12287, supra; and that the evidence showed the contrary. The other contention is that the initiative petition was not in such form that the requirement of this statute could be complied with—that requirement being that when the several

initiative petitions circulated in the various congressional districts are offered for filing with the Secretary of State, he shall retain only one or more of the printed copies of the proposed measure, and shall detach the sheets containing the signatures and affidavits from the other copies and transfer them to the copy retained.

Appellant construes this requirement of the statute as meaning that the proposed measure must appear on one sheet of each initiative petition and that the petitioners' signatures and the circulator's affidavit must appear on a separate sheet or sheets, so that they can be detached. In the instant case the whole initiative petition was placed on the back and front sides of a single sheet. The petition proper and 32 of the signatures were on the front side, and 18 signatures, the affidavit and proposed measure were on the back side. As a result if the part of the sheet containing the proposed measure were "detached" by cutting it off it would take with it a considerable number of the signatures on the reverse side of the sheet, including the mooted name "Paul Smith." It is urged this nullified the signatures which would have been thus severed in complying with the statute.

Neither of these contentions can be sustained. Whether the initiative petition later was properly filed in the Governor's presence, could not affect the criminality of signing a spurious name thereto, if it was in substance, form and intent an initiative petition, and was released beyond or without recall for presentation as such to the Secretary of State. On the second contention, we are inclined to agree that Sec. 12287 does contemplate the proposed measure will appear on one sheet of the initiative petition and the signatures and affidavit on another. But this obviously is to save bulk by discarding the duplicated copies of the proposed measure. When initiative petitions are circulated at various places in at least nine congressional districts, they must be submitted in their entirety to each petitioner for his signature. Then they may be filed, says [267] the statute, in numbered sections "for convenience in handling." Doubtless for the same reason the statute authorizes the Secretary of State to retain only one copy of the proposed measure, attaching all the signatures and affidavits thereto. But in this case since the entire petition was on a single sheet, no space could be saved by detaching the signatures from each copy. Sections 12287 and 12288 expressly provide that conformity thereto need be only substantial. We think the petitions in this case came within that requirement and therefore had apparent legal efficacy.

Another and final assignment on the merits is that the State's evidence failed to make a case for the jury because there was no proof that the appellant was present or authorized the State's witness Elizabeth Branson to sign the name "Paul Smith" to the initiative petition when she did so. She further testified that she could not remember

whether she got that name from one of the telephone directories furnished to her, or whether she just made it up. Appellant's argument is that since he was not shown to have been present and an actual participant in the crime, no crime can be imputed to him because of the girl's act in writing the name, since she, herself, was innocent of criminal intent.

This assignment hardly calls for discussion. Appellant's own statement of facts admits he and his accomplice Greenhaw, employed Elizabeth Branson along with a dozen others, and furnished to them a large number of telephone directories from various cities and towns for the express purpose of copying names therefrom upon the initiative petitions, this necessarily without the knowledge of the persons whose names were used. In that manner they placed nearly 38,000 names of purported signers upon the petitions. He and Greenhaw delivered them to the sponsoring Committee in St. Louis, intending that they should be filed. They were so filed and the co-criminals were paid therefor. The signing was done in the basement of appellant's home. While he was not actually present all the time and gave no directions, he was "in and out." It is idle to say he had no criminal intent; and it is equally futile to argue that the criminality of the act of the Branson girl in signing the name "Paul Smith" to the petition cannot be imputed to appellant because she, herself, was innocent of criminal intent. It would be just as logical to assert that one who induced an innocent child to administer poison to another could not be charged with the crime because the child was innocent.

Several procedural errors are assigned. The first of these complains because the trial court retained J. S. Buckner and O. L. McCall on the jury panel. When Buckner was examined on voir dire he said he then had an opinion touching appellant's guilt or innocence, based on what he had read and heard others (not witnesses) say. Once he said he had a "fixed" opinion. Later he added he had an opinion, but didn't know what was meant by "fixed opinion," though he conceded it would take evidence to remove it. But when asked whether he would take that opinion into the jury box, or whether he could cast aside what he had heard and be governed solely by the testimony and the court's instructions, he answered that he could and would; and that he believed he could weigh the evidence fairly. The juror did not indicate or disclose any personal interest in the case. The trial court has a wide discretion in such matters. We find no error in its ruling. State v. Rasco, 239 Mo. 535, 557 (III), 144 S. W. 449, 455(9); State v. Wampler (Mo. Div. 2) 58 S. W. (2d) 266, 268(4); State v. Kauffman, 335 Mo. 611, 73 S. W. (2d) 217; State v. Londe, 345 Mo. 185, 189(2), 132 S. W. (2d) 501, 503(4).

The complaint made of juror McCall is that he was 74 years old—beyond the age limit of 65 years fixed by Sec. 742, R. S. 1939,

Mo. R. S. A., sec. 742. Yet appellant and his counsel heard the juror so state and without any objection he was chosen as one of the jury. Now, after verdict, appellant's brief argues it was the *court's* duty to reject the juror because the opening lines of the statute are that (italics ours) ''None of the following persons shall be *permitted* to serve as jurors.'' But Sec. 698, R. S. 1939, Mo. R. S. A., sec. 698, provides that no exception to a juror on account of his age or other legal disability shall be allowed after the jury is sworn. And there are many cases holding a party with knowledge of a juror's disqualification cannot wait until the verdict is in, thus gambling on the result, and then complain of the juror's disqualification. 18 West's Mo. Dig., ''Jury'', sec. 110.

Complaint is made of the State's main instruction, No. 1, because it is broader than the information, the statute [268] and the evidence. The first contention is based on the fact that the information charged the appellant alone or in concert with others *signed* the name Paul Smith to the initiative petition, whereas the instruction submitted the question whether he had *caused and procured it to be done*, when there was no proof of it. Of course, if he did cause and procure the spurious signature to be attached, in law he signed it; and we have shown in the third and fourth preceding paragraphs that there was evidence of that fact. The second contention, that the instruction is broader than the statute, rests on the fact that the instruction submitted the question of appellant's procuring the signature *without the consent or authority* of Paul Smith, when the statute does not contain the underscored qualification. We have also discussed that question earlier in the opinion, showing that if the statute is unqualified then this added qualification was mere surplusage in the information. Since this is true its presence in the instruction would only place an unnecessary added burden on the State.

The third contention, that the instruction is broader than the evidence, counts on the fact that the instruction described the proposed amendment as enacting the 16 new sections *in the stead* of the 25 existing sections, whereas the amendment did not propose to enact any sections in lieu of others, but only to *initiate* the new sections. This is a confused and meaningless distinction. What Section A of the Amendment provided was that the 25 specified existing sections be repealed and stricken from Article IV, and that the 16 new sections, bearing the same numbers from 1 to 11, and thence numbered 11A to 11E be *inserted* as a part of the Article. There is nothing in this point.

Another attack is made on the instruction because it required the jury to find whether appellant procured the name Paul Smith to be falsely signed on the initiative petition, ''set out in the information,'' when it was not set out in the information but only in the evidence. The initiative petition was a distinction, photostatic docu-

ment 17 1/8 inches long and 10 7/8 inches wide, prominently figuring in the evidence and constituting the whole physical basis for the prosecution. We think State v. Herring, 268 Mo. 514, 536, 188 S. W. 169, 175 (10), cited by appellant on this point, does not sustain him. In that case a manslaughter instruction told the jury if they found the defendants unnecessarily struck, beat and injured the deceased "in the manner set out in the information" and he died therefrom, they should convict the defendants. Yet this reference to the information was held "unnecessary, superfluous and harmless" because the other facts stated in the instruction, if found, would have supported a conviction. The opinion stated in substance that such a reference is erroneous, only when it calls for facts not contained in the instruction which are necessary for the jury's consideration. Two later cases say no such reference will render an instruction invalid unless it leaves "the jury no other alternative than such reference to determine their duty." State v. Burgess (Mo. Div. 2), 193 S. W. 821, 826(20); State v. Hembree, 295 Mo. 1, 11, 242 S. W. 911, 914(7). Here the instruction would have been just as good if the reference to the information had been omitted. The initiative petition was in evidence. We overrule the contention.

 The final assignment on this instruction No. 1 is that it failed to inform the jury of the minimum punishment that could be assessed against appellant. The punishment fixed by the statute, Sec. 12294, supra, is "a fine not exceeding five hundred dollars or by imprisonment in the penitentiary not exceeding two years, or by both such fine and imprisonment." The punishment authorized by the instruction was "imprisonment in the penitentiary at not exceeding two years and not less than two years, or at a fine not exceeding $500.00." So it will be seen this assignment is wholly without foundation. In fact the instruction was more favorable to the appellant than is the statute. For the latter permits the assessment of both the fine and imprisonment. It was not error to tell the jury the penitentiary sentence could not be *less* than two years, since Sec. 4850, R. S. 1939, Mo. R. S. A., sec. 4850, makes that the minimum for such imprisonment.

 Error is assigned in the giving of State's instruction No. 8 on the credibility of witnesses. No complaint is made about the form of the instruction. The only reason given is that the instruction was unwarranted because the defense offered no evidence. Appellant cites State v. Summers (Mo. App.), 281 S. W. 123, 124(5). We cannot see that the decision has any application [269] to the facts and instruction here. It does say such instructions should not be given as a matter of course in all cases; that usually they are prompted by the fact that the testimony of witnesses has been contradicted; and that where the defendant in a criminal case is contradicted, and since he is the sole interested witness, the instruction tends to single him out

although he is not named. But here, if the instruction tended to stigmatize any witnesses it must have been the State's witnesses for the defense had none. We can see no error in the giving of the instruction.

A general assignment of error complains of the refusal of appellant's instructions A, B and C. The first declared as a matter of law that the petition offered in evidence was not an initiative petition. Earlier in the opinion we have held to the contrary. The other two declared that to be guilty the appellant must have signed the name Paul Smith to the initiative petition or have been present aiding, assisting or abetting someone else in doing so. This is not the law. He was at least an accessory before the fact, and can be prosecuted as a principal. Sec. 4839, R. S. 1939, Mo. R. S. A., sec. 4839; State v. Parker, 324 Mo. 734, 740(IV), 24 S. W. (2d) 1023, 1026; State v. Lackmann (Mo. Div. 2), 12 S. W. (2d) 424, 425(2).

The final assignment charges the prosecuting attorney was guilty of gross misconduct in his closing argument, by commenting on the appellant's failure to testify. The argument was not preserved in the bill of exceptions. Neither were exceptions saved thereto. The point is raised for the first time in the seventeenth assignment in the motion for new trial, which latter is verified by the appellant's affidavit. But it is not contended such misconduct was unknown to appellant and his counsel at the time. On the contrary the assignment recites no objection was made thereto because it was the duty of the *court* to interfere, since Sec. 4082, R. S. 1939, Mo. R. S. A., sec. 4082 closed the mouth of appellant's counsel by providing the fact that the defendant did not testify shall not "be referred to by any attorney in the case." For obvious reasons this contention cannot be sustained.

We find no prejudicial error in the record, and the judgment is affirmed. All concur.