**STATE ex rel. Theodore B. SCOTT and
Ed Stegner, Relators,**

v.

**James C. KIRKPATRICK, Secretary of
State, State of Missouri, Respondent,**

**Thomas D. Graham, Intervenor-Respondent.**

No. 58080.

Supreme Court of Missouri,
En Banc.

Sept. 6, 1972.

Thomas D. Graham, pro se.

Cullen Coil, Forrest P. Carson and Ronald R. McMillin, Jefferson City, for relators.

John C. Danforth, Atty. Gen., B. J. Jones, Asst. Atty. Gen., Jefferson City, for respondent.

MORGAN, Judge.

In the trial court, relators, who were identified as citizens and taxpayers of this state, sought a peremptory writ of mandamus to compel respondent, the Secretary of State, to accept for filing and certify as legally sufficient certain "initiative petitions" calling for submission to the electorate at the General Election to be held on November 7, 1972, a proposed amendment, commonly referred to as the "soft drink tax" amendment, to the constitution of this state. Intervenor, also identified as a citizen and taxpayer, was allowed to intervene as a party respondent. Relief was denied and relators have appealed. We affirm.

Initially, we note that the trial court premised its denial of relief solely on the alleged deficiency of such petitions as was asserted by respondent secretary, i. e.,

" . . . the failure of the petitioners to comply with the requirements of Article III, Section 50, of the Constitution of Missouri, 1945, in that said petitions do not contain the mandatory enacting clause . . .." Said section, in part, provides: "Every such petition . . . *shall contain an enacting clause* and the full text of the measure. Petitions for constitutional amendments *shall* not contain more than one amended and revised article of this constitution, or one new article which *shall* not contain more than one subject and matters properly connected therewith, and *the enacting clause thereof shall be* 'Bc it resolved by the people of the state of Missouri that the Constitution be amended:'." (Emphasis added.)

That the petitions as filed fail to conform to such constitutional dictates is obviously apparent for they contain no enacting clause whatever. Relators seek to rationalize the absence thereof on the following grounds: (1) substantial compliance with constitutional provisions considered as a whole is sufficient, (2) the requirement there be an enactment clause is simply directory and not mandatory, and (3) the desires of a large number of citizens should not be "subverted by the lack of a technical introduction." To sustain such arguments, relators cite and rely on the following Missouri cases: City of Cape Girardeau v. Riley, 52 Mo. 424 (1873); State ex rel. Halliburton v. Roach, 230 Mo. 408, 130 S.W. 689 (1910); and, State v. Holman, Mo., 296 S.W.2d 482 (1956).

As suggested by the respondent secretary, it must be noted that the Riley case did not involve the initiative process for it was decided in 1873 under the Missouri Constitution of 1865 which made no provision for the same. The later Constitution of 1875 was amended on November 3, 1908, to include for the first time the initiative process. Nevertheless, the Riley case involved the validity of an act passed by the General Assembly and signed by the governor which violated the constitutional requirement, then in effect, that the style of laws should be: "Be it enacted by the General Assembly of the State of Missouri as follows: ." The court ruled the law valid on the basis it would not sacrifice "substance to mere form," but went on to buttress its holding by noting (1) it had been duly passed by both branches of the legislature and signed by the governor "bearing sufficient evidence that it is really and truly a law,". and, (2) that it did "not pretend to be an original act." The provision designating a similar "style" for legislative acts has been carried forward and may be found in Section 21 of Article III of the Constitution of 1945. Respondents challenge both the validity of the holding in Riley as well as its applicability to the instant case. It is argued that: "It [Riley] concerned a law conceived by professional lawmakers who were fully aware of the consequences of their acts. This case, on the other hand, concerns an *initiative petition for a constitutional amendment* which was conceived and promoted by persons who must be considered less than professional in the area of lawmaking. While the absence of an enacting clause in an act proposed by the General Assembly probably would not prevent the professional lawmaker from being aware of what he was doing, the same cannot be said about the average signer of an initiative petition for a constitutional amendment." The suggestion is not without merit nor unfounded. This court while considering another question reference the same general subject matter (required publication of the full text in initiative proceedings) said in Moore v. Brown, Mo., 165 S.W.2d 657, at l. c. 662: "Probably this special preliminary procedure was allowed only in the case of initiated amendments on the assumption that those proposed by a deliberative body, such as the General Assembly or a Constitutional Convention, would be more carefully drawn." Further, at l. c. 663, comment was made that: "Such a requirement is not unrea-

sonable but a wholesome precaution. A constitution declares the fundamental law and should take a long range view of social needs, allowing for but not being based wholly on temporary or cyclic conditions. The best results can be obtained only through a full understanding of the constitutional changes proposed and those needed. There is opportunity for full discussion of these questions when the changes are formulated by a deliberative body representing the whole people; but not so when the amendment is proposed and promoted by any self-serving group." Further, it is submitted that the Riley case stands out as an exception from the general rule—a fact noted in Commonwealth v. Illinois Central Railroad Co., 160 Ky. 745, 170 S.W. 171. We believe the reasoning noted makes the Riley case inapplicable here.

■■ The Roach case, supra, concerned issues relative to the "title" of the text of an enactment and other matters not directly on the point now at issue. The Holman case, supra, primarily involved the questioned compliance with publication requirements of proposed amendments as specified in Section 2(b) of Article 12 of the 1945 Constitution which, in part, provides: "*If possible,* each proposed amendment shall be published once a week for two consecutive weeks in two newspapers of different political faith in each county * * *." (Emphasis added.) It is true, as relators point out, that the court in that case said, 296 S.W.2d l. c. 495: "The general rule is that the provisions of a constitution regulating its own amendment are mandatory and not directory. Such has been the rule in this state, but substantial compliance is sufficient. The same general rule applies to other constitutional provisions, *unless by express provision or necessary implication, a different intention is manifest.*" (Emphasis added.) The court went on to say, l. c. 496: "In any event, the provisions of the section of the Constitution and the section of the statute in question are modified

by the words 'if possible.' These words have a purpose and a meaning and necessarily modify the provisions that would otherwise be absolute and mandatory in character." To avoid the possibility that limited discrepancies, either negligent or purposeful, might occur with so many publications involved or that precise compliance might not be possible because of the absence of newspapers in certain localities, which might make the provision inoperable, the Holman case recognized its departure from the general rule. Absent such designated exceptions or impossibilities of precise compliance, "This court is quite firmly wedded to the doctrine that constitutional requirements must be considered as mandatory rather than directory." State v. Hitchcock, 241 Mo. 433, 146 S.W. 40, 50 [4]. The degree of compliance required is somewhat more exacting in those instances where the attack is made prior to adoption as in the present case, particularly as to procedural matters. State v. Burns, 351 Mo. 163, 172 S.W.2d 259, 265 [10–11].

Further guidance may be found in Moore v. Brown, supra, wherein this court declared, 165 S.W.2d at l. c. 659, that: "It is fundamental that the people themselves are bound by their own constitution * * *. Where they have provided therein a method for amending it, they must conform to that procedure * * *."

We need not look to specific cases from other states as it is sufficient to note the general rule as expressed in 82 C.J.S. Statutes § 134, page 235, to-wit: "Enacting clause. A provision in a state constitution requiring an enacting clause in a statute applies to initiative measures and is mandatory, and under such a requirement the omission of an enacting clause in a proposed initiative measure renders it void."

■ Finally, we consider whether or not there is any legal basis whatever for sustaining relators' arguments, previously noted, that the absence of an enacting

clause is immaterial and of no significance. First, we consider the assertion that relators' petitions evidence a "substantial compliance" with the constitutional mandate in question. Admittedly, it is rather difficult to discuss or evaluate this argument for the simple reason the petitions do not purport to set out an enactment clause. This is not an instance wherein there was or was not a substantial compliance but one where there was no compliance whatever. Can this fact be ignored? To resolve an answer to the question, it is necessary to recognize the universally accepted reason for the mandate itself—which is, that potential signers are to be made specifically aware of the solemnity of their act in signing that they may do so with full apprecia⸗ tion of the fact that they are participating in an effort to change the fundamental law, i. e., the constitution of their state. After admitting such purpose, relators submit that they "find it impossible to imagine any citizens whose decision to sign or not to sign these petitions would be affected by the presence or absence of the enacting clause as set out in § 50." Such an assumption can be based only on speculation and conjecture and may be true or false. Obviously, the people of this state prefer to be more cautious. For instance, the Debates of the 1945 Missouri Constitution, page 400, reflect the following comment: "Likewise the section has been amplified to include an enacting clause for constitutional provisions by reason of the confusion which is now attended under the present Constitution * * *." If we were to accept the argument as made, we would be in the untenable position of disregarding the unambiguous and clearly delineated provisions of the section in question.

■ Second, in recognition of the argument as made, we, nevertheless, consider whether the requirement there be an enactment clause is mandatory or directory. As both noted and emphasized, that portion of Section 50 is couched in terms

declaring that the same "shall" be complied with. We need not review, again, the fact the word "shall" in its legal connotation is accepted as a mandate calling for compliance. The section declares "such petition * * * shall contain an enacting clause and the full text of the measure." Would one dare suggest such a petition need not contain the "text" of the proposal? We think not. Even if we were to reconsider and, for purposes of argument only, accept relators' premise that there had been a substantial compliance, our answer could not be different. For as said in the Holman case, 296 S.W. 2d l. c. 495, supra, "The same general rule applies [approving substantial compliance] . . . unless by express provision . . . a different intention is manifest." Such a "different intention" is clearly manifested in Section 50 which could not have been phrased in more precise and commanding language. Not only does the section dictate that there "shall" be an enacting clause, but specifically sets out what that clause "shall" be. Under any approach to the problem, we are compelled to rule such requirements to be mandatory and not directory.

Third, we recognize what, in fact, is not truly a legitimate legal argument, but one presented—that "the desire of a large number of Missouri citizens [approximately 160,000] should not be subverted by the lack of a technical introduction." The weakness of this argument is twofold. In the first place, the basic purpose and laudable objective of requiring an enactment clause, previously discussed, makes it an obvious misnomer to classify the same as a "technical introduction." As·said in State v. Hitchcock, supra, 146 S.W. at l. c. 51: " . . . the courts have done far more harm and injustice by judicial legislation—that is, by interpolating into statutes and Constitutions words and phrases which the lawmakers never placed therein, and by striking therefrom words and phrases which were placed there by the lawmakers—than they have by clinging to the so-called technicalities."

In the second place, whether or not we "subvert" the desires of the signers of the challenged petitions, regardless of their number, turns on the desires of all of the people of this state, regardless of their number, as expressed in their constitution which declares the fundamental law and which we are bound to follow. We have no other alternative.

For the reasons indicated, we have concluded that the respondent secretary acted properly in rejecting such petitions for filing and certification, and that the trial court ruled correctly in sustaining such action.

However, we deem it appropriate to note the further arguments of intervenor that such petitions are not legally proper. They are: (1) The petitions violate Article III, Section 51, which provides, in part: "The initiative shall not be used for the appropriation of money other than new revenues created and provided thereby . . ."; (2) The petitions contain more than one subject in violation of Article III, Section 50, and Article 12, Section 2(b); (3) The petitions do not contain a "title" in violation of Section 126.041, RSMo 1969, V.A.M.S.; and, (4) The petitions are fatally defective because they fail to disclose which integrally related provisions of the constitution are being changed.

It is not necessary for us to consider each of the additional challenges made, in view of our ruling in connection with the absence of an enacting clause; but at first blush, they appear such as to call for our paraphrasing the oft-quoted comment of the late Judge Lamm that even he who runs should be able to see.

The judgment is affirmed.

FINCH, C. J., DONNELLY, BARDGETT and HENLEY, JJ., and SMITH, Special Judge, concur.

SEILER, J., dissents in separate dissenting opinion filed.

HOLMAN, J., not participating.

SEILER, Judge (dissenting).

I respectfully dissent. In my opinion, the majority opinion exalts mere form over substance, leaves the merits of this case unresolved, and is contra to the basic rule that " . . . In the matter of . . . initiative and referendum, the people are exercising power reserved to them and the provisions under which they proceed should be construed liberally to the end that their right to determine all proper questions by free and open elections shall be secure . . . ", as declared by the court in State ex rel. Voss v. Davis, (Mo.Sup.) 418 S.W.2d 163, 167.

Art. I, Sec. I, 1945 Constitution of Missouri, provides "That all political power is vested in and derived from the people . . . ", and Art. III, Sec. 49 provides "The people reserve power to propose and enact or reject laws and amendments to the constitution by the initiative, independent of the general assembly . . . " Just a few months ago we emphasized " . . . a recognition of the basic fact that the people themselves are the source of all governmental power. Their will is supreme. They spell out in their constitution what form their government shall take and what powers it shall have . . . ", State ex rel. St. Louis F. F. Ass'n Loc. No. 73 v. Stemmler, (Mo.Sup. banc) 479 S.W.2d 456, 458. Yet the majority opinion, by investing the words "Be it resolved by the people of the state of Missouri that the Constitution be amended" with some magic power, holds the mere absence of these words bars the people of Missouri from exercising their reserved political power with respect to the measure under consideration.

The majority opinion does not contend that the "Be it resolved", etc. language furnishes any helpful information as to what the proposed measure is about, but instead finds in the words a purpose of solemnly warning the potential signer of the grave action he is about to take— he is about to participate in an effort

to change the fundamental law. This is ingenious, but, it seems to me, has only a surface plausibility.

In the first place, signing an initiative petition does not accomplish any change in the fundamental law. All it does is to assist in getting the matter presented to the voters, who are the ones who make the change, if any is made. In the second place, the people of Missouri have the right to change their constitution, and this right is not circumscribed by any requirement that they must be solemnly warned about it before they have a right to do so. In the third place, the thought that there is a need for a solemn warning rests on the unjustified assumption that the people of Missouri are not very knowledgeable.

If there is merit to the point of view of the majority that the people must be solemnly warned before they propose an initiative, why, then is there an absence of any such requirement when the matter is actually put to a vote by the entire electorate? Why warn only the 8% who sign the petitions and do nothing about requiring an equally solemn warning to the 100% of the electorate eligible to vote on the proposed measure? It is at the election that the constitution will be changed, if it is to be changed, yet all the constitution requires for the election is that " . . . any measure proposed shall take effect when approved by a majority of the votes cast thereon . . . ." There is no requirement that the voters shall be solemnly admonished they are voting to amend the constitution. All the voters need be concerned about is the "measure proposed", and in the case before us, there is no dispute but that the full text of the measure has been set forth in the petition. With all deference to the undoubted clarity and force of expression of the majority opinion, it seems to me that the view espoused is, in the final analysis, strained and artificial.

Art. III, Sec. 53 of the constitution provides that in submitting an initiative measure to the people, the officials shall be governed by general laws. The general law, Chap. 126, V.A.M.S., requires the attorney general to prepare a ballot title for the measure which shall express "the purpose of the measure." This is what goes on the ballot, together with the heading, "Proposed by initiative petition." One searches in vain for anything requiring admonishing the people to beware— they are amending the constitution. The reason is, of course, that it is needless. It is plain they are voting on a proposition to amend the constitution, just as it is equally plain to the signer of the initiative petition before us, that he is proposing an amendment to the constitution, whether the "Be it resolved", etc. language is used or not.

When the electorate of the state votes on the proposed amendment all they have before them is the fact they are voting on the measure and a brief statement of its content. If this is all that is required when the voters are actually voting on adoption or rejection, certainly no more is needed when all that is being done is to sign a petition to get the matter before the voters. The fact is that the more than 160,000 Missouri citizens mentioned by the majority opinion as having signed the petition in question are not changing or tampering with the constitution at all, nor could they. All they are doing is trying to present the matter to the people for adoption or rejection, but we are denying the people a chance to vote because they failed to include certain magic words, which add nothing to the proposed measure, and which the majority opinion itself characterize as nothing more than "procedural."

In response to the above it may be said, "Yes, what you say may all be true, but we are confronted with Art. III, Sec. 50, which says that every initiative petition *shall* contain an enacting clause and then spells it out word by word." This is answered by the City of Cape Girardeau v. Riley decision, 52 Mo. 424. The 1865 Missouri constitution, by Art. IV, Sec. XXVI, provided "The style of the

laws of this state shall be—'*Be it enacted by the general assembly of the State of Missouri, as follows.*'" In the Cape Girardeau case the court had before it the validity of an act of the legislature which had been passed without any enacting clause whatever, despite the above constitutional requirement. The court sensibly discussed the matter as one of legislative style, and held that despite the mandatory word *shall* the provision as to style was directory only, not mandatory. The court reasoned at 52 Mo. 1. c. 428: "The enacting clause is certainly not of the essence of the law. It furnishes no aid in its construction, and its provisions are as clear and intelligible without it as they are with it . . ." This reasoning applies with equal force to the present case, and although the principal opinion undertakes to distinguish the City of Cape Girardeau case, it does not, in my judgment, succeed in diminishing the force of the court's reasoning or its applicability to the case before us. We should follow it.

Inasmuch as the majority opinion decides this case on the basis of the failure to include the magic words, I do not attempt to reach the additional questions raised by the intervenor.