

# SUPREME COURT OF MISSOURI
## en banc

MARY ELIZABETH ANNE COLEMAN,     )     *Opinion issued September 20, 2024*
KATHLEEN ANNE FORCK, HANNAH      )
SUE KELLY AND MARGUERITE         )
ANN "PEGGY" FORREST,             )
                                 )
    Respondents,                 )
                                 )
v.                               )     No. SC100742
                                 )
JOHN R. ASHCROFT,                )
                                 )
    Respondent,                  )
                                 )
AND                              )
                                 )
MISSOURIANS FOR CONSTITUTIONAL   )
FREEDOM AND ANNA FITZ-JAMES,     )
                                 )
    Intervenors-Appellants.      )

### APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
The Honorable Christopher K. Limbaugh, Judge

This case is not about abortion. It concerns only what information the constitution

requires proponents to include on any initiative petition. It is about form and procedure,

not substance.

The Attorney General approved the form of the Amendment 3 petition 17 months

ago, in March 2023. If there was a defect in the form of the petition, it is fair to assume

the state's chief legal officer would have identified it and notified the Secretary of State. He did not. Then, pursuant to section 116.332.4,[1] the Secretary of State conducted an independent analysis of the form of the petition and made the "final decision" that it was in proper form. Again, if there was a defect, it is fair to assume the one constitutional officer statutorily designated to supervise every initiative petition from start to finish would have identified it. He did not.

The reason these decisions by the Attorney General and the Secretary of State are so important is they occur at the beginning of the process, when an error in form can be corrected with minimum disruption to the citizens' constitutional power of initiative petition. Perhaps more important, if (as here) the claimed defect is that the petition omits required information essential for Missourians to have before deciding whether to sign the petition in the first instance, a correction at the beginning of the process – before signatures are gathered – protects that interest. One that occurs 17 months later, after hundreds of thousands have signed the petition and those signatures have been verified and counted, and the measure has been certified for the ballot, does not.

Proponents of Amendment 3 relied on the decisions by the Attorney General and the Secretary that their petition was in proper form and circulated that petition for signatures. They collected all the signatures the constitution requires and tens of thousands more. The Secretary verified and counted those signatures and certified they were sufficient for Amendment 3 to be placed on the 2024 general election ballot. That

---

[1] All statutory references are to RSMo 2016 unless otherwise noted.

certification included the Secretary's conclusion the petition complied in every respect with the constitution and the laws of this state, including the form requirements that the Secretary had made a "final decision" were satisfied more than a year earlier. Respondents Coleman, Forck, Kelly and Forrest (collectively, "Opponents") were entitled to challenge that certification under section 116.200. On August 22, 2024, they did so.

Opponents challenge the petition's form, which was unchanged since its first approval by the Attorney General and the Secretary of State in March 2023. They claim that, under article III, section 50 of the Missouri Constitution and section 116.050.2(2), Fitz-James and Missourians for Constitutional Freedom (collectively, "Proponents") were required to include in the petition every constitutional provision and every statute that may be invalidated, limited, or otherwise impacted if voters approve Amendment 3. But section 116.050.2(2) imposes no such requirement. Even if it did, nothing in article III, section 50 imposes such a requirement, and restrictions on the people's power of initiative must be found in the constitution. They cannot be imposed by the general assembly. *See Rekart v. Kirkpatrick*, 639 S.W.2d 606, 608 (Mo. banc 1982) (holding a statute unconstitutional because it "interfere[d] with and impede[d] the initiative power").

So, the question is only what the constitution requires. This Court has stated article III, section 50 requires a petition proposing a constitutional amendment to identify those existing sections of the **_constitution_** utterly inconsistent and irreconcilable with the proposed amendment. *Buchanan v. Kirkpatrick*, 615 S.W.2d 6, 15 (Mo. banc 1981). But this Court has **<u>never</u>** held that article III, section 50 requires a petition proposing a

3

constitutional amendment to identify all **statutes** that might later be declared invalid in whole or in part if the constitutional amendment is approved by the voters. Such a wide-ranging extension of *Buchanan* finds no basis in the reasoning of that case or the cases on which it relies, no basis in the text of the constitution, and imposes burdensome requirements with which drafters of initiative petitions cannot reasonably comply. Accordingly, this Court refuses Opponents' invitation to extend *Buchanan* and thereby impose on Proponents a new form requirement – more than a year after the two relevant constitutional officers approved the form of their petition – that no prior initiative petition has had to meet. Because Amendment 3 does not purport to repeal any existing constitutional provision and is not so utterly and completely inconsistent with any existing constitutional article or section as to constitute a direct conflict or irreconcilable repugnance, Opponents' first challenge fails.

Opponents' second claim again asserts a defect neither the Attorney General nor the Secretary of State found 17 months ago when each of them approved the form of Amendment 3's petition. This time, the claimed defect is that Amendment 3 violates the "single subject" requirement of article III, section 50 and article XIII, section 2(b). Constitutional provisions, by their nature as part of the state's fundamental law, often speak in general terms and necessarily have wide-reaching effects. As a result, the constitutional "single subject" requirement prohibits only proposed constitutional amendments that have multiple unrelated provisions. All provisions need not relate to each other. Instead, they must either all relate to some single, reasonably specific subject or be "properly connected therewith." Mo. Const. art. III, § 50; art. XIII, § 2(b).

4

Opponents' claim that Amendment 3 violates the constitutional "single subject" requirement is barely colorable. The proposed amendment identifies its purpose as protecting reproductive freedom. All its provisions easily bear a sufficient relationship to that subject – or are properly connected to it – to satisfy article III, section 50 and article XIII, section 2(b). Like their first claim, Opponents' second attack on Amendment 3 fails.

Finally, Opponents assert a third claim. This claim does not attack Amendment 3 but, rather, claims that 116.200.1 is unconstitutional because it unfairly limits a citizen's right to challenge the Secretary of State's certification that an initiative is sufficient to be placed on the ballot. Specifically, section 116.150 requires the Secretary to certify that a petition has (or does not have) enough valid signatures and is (or is not) sufficient to be placed on the ballot, and the Secretary must make this certification by the 13th Tuesday prior to the election. Section 116.200.1 permits any citizen to challenge that certification within 10 days. Section 115.125.3, RSMo Supp. 2018, however, prohibits changes to the ballot (including those ordered by a court) fewer than eight weeks before the election. As a result, when the Secretary waits until the very last day to certify a petition as sufficient (as he did here), Opponents point out that a citizen challenging that certification has at most only 28 days to prosecute that challenge, including appeals (if any). And, because Opponents waited nine days to file their challenge, they had only 19 days to complete the process.

The circuit court and this Court were able to fully analyze and finally address Opponents' first two claims notwithstanding the very demanding timetable. For that

5

reason, Opponents' third claim is denied as moot. Nevertheless, the concerns Opponents raised in this claim do resonate with this Court. When the Secretary certifies a petition at the very end of the statutory period for doing so, challenges to that certification under section 116.200.1 must be expedited to – and sometimes very nearly beyond – the limits of thorough advocacy and judicial stamina. To be sure, this cannot be avoided when the claim challenges whether a sufficient number of valid signatures were submitted to the Secretary. That is the last decision the Secretary makes, and it necessarily comes at the end of the initiative process.

But there is no similar justification for delaying to the very end of the process claims regarding the form of the petition. Section 116.200.1 sets only the last day for such claims; it does not prevent them from being raised earlier. The Attorney General and the Secretary approved the form of the Amendment 3 petition more than 17 months ago. It has not changed. Opponents had, or had access to, that petition immediately thereafter (if not before). If the Secretary had determined the form was deficient all those months ago (either on one of the grounds Opponents claim or any other), Proponents could have rectified the defect or challenged the Secretary's decision. Section 116.332.4 calls this a "final decision" and requires written notice to the person who submitted the petition. Section 536.150 provides that, when an

> administrative officer … shall have rendered a decision which is not subject
> to administrative review, determining the legal rights, duties or privileges
> of any person … and there is no other provision for judicial inquiry into or
> review of such decision, such decision may be reviewed by suit for
> injunction, certiorari, mandamus, prohibition or other appropriate action[.]

6

§ 536.150. *Cf. State ex rel. Fitz-James v. Bailey*, 670 S.W.3d 1, 13 (Mo. banc 2023) (holding mandamus was proper to compel a state official to comply with statutory requirements in the initiative process). Accordingly, a proponent has at least two ways to challenge decisions as to form at the beginning of the process.

It is an open question, however, whether an opponent can challenge the Secretary's decision approving a petition's form, whether under section 536.150, or a simple petition for writ of mandamus, or a declaratory judgment action, or some other means. No one knows because Opponents did not try. As has been said for centuries, *vigilantibus et non dormientibus jura subveniunt*, or "[t]he laws aid the vigilant, not those who sleep." *Black's Law Dictionary* 1764 (8th ed. 2004). Opponents have not suffered the application of this doctrine in this case because this Court was able to reach and timely dispose of their first two claims on the merits. But future opponents who fear getting trapped between the Scylla and Charybdis of sections 116.200.1 and 115.125.3, or who wish to challenge the constitutional validity of either statute, should give thought to at least attempting to assert their form-related claims at the beginning of the process when the Secretary makes the "final determination" under section 116.332.4 that the form of a petition is correct.

For these reasons, as explained more fully below, this Court entered an order on September 10, 2024, that the Secretary's certification approving Amendment 3 for the ballot was correct, that the circuit court's judgment rejecting that certification was

reversed, and that the Secretary must take all steps necessary to see that Amendment 3 is put before the voters at the 2024 general election. This opinion follows.[2]

## BACKGROUND

On March 8, 2023, Dr. Anna Fitz-James submitted to the Secretary of State, as required by section 116.332.1, a sample petition sheet for the proposed constitutional amendment now referred to as Amendment 3.[3] The Secretary posted the text of the initiative on his website,[4] as he was required to do by section 116.332.2, and sent a copy

---

[2] This practice of disposing of an appeal by order, with opinion(s) to follow, is a highly disfavored departure from this Court's usual practice. But this case is not the first time this Court has been pressed by election deadlines into using this approach. *See Rekart v. Kirkpatrick*, 639 S.W.2d 606, 607 (Mo. banc 1982) ("This appeal was expedited for hearing …, after which the Court issued its order, with opinion to follow, which reversed the trial court's judgment and directed the Secretary of State to place the initiative proposition on the … ballot.").

[3] At the same time, Fitz-James submitted 11 similar sample petition sheets that are not at issue in this case.

[4] The full text submitted to and approved by the Secretary is as follows:

NOTICE: The proposed amendment revises Article I of the Constitution by adopting one new Section to be known as Article 1, Section 36.

*Be it resolved by the people of the state of Missouri that the Constitution be amended:*

Section A. Article I of the Constitution is revised by adopting one new Section to be known as Article I, Section 36 to read as follows:

Section 36. 1. This Section shall be known as "The Right to Reproductive Freedom Initiative."

2. The Government shall not deny or infringe upon a person's fundamental right to reproductive freedom, which is the right to make and carry out decisions about all matters relating to reproductive health care, including but not limited to prenatal care, childbirth, postpartum care, birth control, abortion care, miscarriage care, and respectful birthing conditions.

8

3. The right to reproductive freedom shall not be denied, interfered with, delayed, or otherwise restricted unless the Government demonstrates that such action is justified by a compelling governmental interest achieved by the least restrictive means. Any denial, interference, delay, or restriction of the right to reproductive freedom shall be presumed invalid. For purposes of this Section, a governmental interest is compelling only if it is for the limited purpose and has the limited effect of improving or maintaining the health of a person seeking care, is consistent with widely accepted clinical standards of practice and evidence-based medicine, and does not infringe on that person's autonomous decision-making.

4. Notwithstanding subsection 3 of this Section, the general assembly may enact laws that regulate the provision of abortion after Fetal Viability provided that under no circumstance shall the Government deny, interfere with, delay, or otherwise restrict an abortion that in the good faith judgment of a treating health care professional is needed to protect the life or physical or mental health of the pregnant person.

5. No person shall be penalized, prosecuted, or otherwise subjected to adverse action based on their actual, potential, perceived, or alleged pregnancy outcomes, including but not limited to miscarriage, stillbirth, or abortion. Nor shall any person assisting a person in exercising their right to reproductive freedom with that person's consent be penalized, prosecuted, or otherwise subjected to adverse action for doing so.

6. The Government shall not discriminate against persons providing or obtaining reproductive health care or assisting another person in doing so.

7. If any provision of this Section or the application thereof to anyone or to any circumstance is held invalid, the remainder of those provisions and the application of such provisions to others or other circumstances shall not be affected thereby.

8. For purposes of this Section, the following terms mean:

(1) "Fetal Viability", the point in pregnancy when, in the good faith judgment of a treating health care professional and based on the particular facts of the case. there is a significant likelihood of the fetus's sustained survival outside the uterus without the application of extraordinary medical measures.

(2) "Government",

a. the state of Missouri; or

b. any municipality, city, town, village, township, district, authority, public subdivision or public corporation having the power to tax or regulate, or any portion of two or more such entities within the state of Missouri.

9

of the proposed petition to the Attorney General and the Auditor. At this point, section 116.332.1 requires both the Attorney General and the Secretary to independently assess the form of the petition to ensure it complies with all applicable requirements. The Attorney General, pursuant to section 116.332.3, approved the form of the proposed petition and notified the Secretary. Under section 116.332.4, then, the Secretary was to review the public comments[5] received and the Attorney General's statements as to form, and "make a final decision as to the approval or rejection of the form of the petition." The Secretary did so, approving the form of the petition for Amendment 3 and notifying Fitz-James of this "final decision."

Once the form was approved, the Secretary prepared a summary of the measure pursuant to section 116.334.1, and the Auditor prepared a fiscal note and fiscal note summary pursuant to section 116.175.2. Together, the Secretary's summary of the measure and Auditor's fiscal note summary constitute the official ballot title for the measure. § 116.180. These are sent to the Attorney General for approval as to form. §§ 116.334.1, 116.175.4. The Attorney General, however, refused to approve the form of the Auditor's fiscal note summary for Amendment 3. This refusal prevented the Secretary from certifying the official ballot title for the initiative petition under section 116.180, and delayed Proponents circulating the petition for signatures.

---

[5] Neither Opponents nor any other members of the public offered comments that the form of the petition was improper on any ground, let alone the grounds asserted by Opponents in this action.

10

On May 4, 2023, Fitz-James filed a petition in circuit court seeking a writ of mandamus to compel the Attorney General to approve the fiscal note summary. The circuit court issued the writ directing the Attorney General to do so, and this Court affirmed. *Fitz-James*, 670 S.W.3d at 13.

On July 26, 2023, after the Attorney General approved the legal content of the fiscal note summary, the Secretary certified that summary and his summary statement as the official ballot title for the initiative. That same day, Fitz-James filed suit under section 116.190 claiming the Secretary's summary was insufficient and unfair. On September 25, 2023, the circuit court entered judgment for Fitz-James holding the summary statement was insufficient and unfair and redrafting the summary to comply with section 116.334.1. The court of appeals agreed the Secretary's summary was insufficient and unfair, and certified a summary statement varying slightly from that crafted by the circuit court.[6] *Fitz-James v. Ashcroft*, 678 S.W.3d 194, 215-25 (Mo. App. 2023).

With the ballot title certified, Proponents began circulating the initiative for signatures. On May 3, 2024, Proponents filed the signed petition with the Secretary of State as required by section 116.100. The Secretary reviewed and ultimately validated a sufficient number of signatures in a sufficient number of congressional districts to meet

---

[6] In a separate action, Opponents challenged the fiscal note summary. The circuit court rejected that challenge, and the court of appeals affirmed. *Kelly v. Fitzpatrick*, 677 S.W.3d 622, 643 (Mo. App. 2023). At no point in that case did Opponents attempt to raise the arguments asserted in the present action.

the requirements for putting Amendment 3 on the ballot. § 116.150.1. Accordingly, on August 13, the Secretary issued a certificate that the petition was sufficient. *Id.* In doing so, the Secretary not only determined that sufficient valid signatures had been submitted, but also that the petition "complies with the Constitution of Missouri and with this chapter." § 116.120.1. But this does not mean the Secretary was entitled to re-assess matters of form he had already approved. Instead, section 116.150.2 provides: "The secretary of state shall issue a certificate *only* for a petition approved pursuant to section 116.332 [requiring the Secretary make a "final decision" as to form before the sample sheet of the petition is approved]." § 116.150.2 (emphasis added).[7] Following the certification, the Secretary assigned the heading "Amendment 3" and notified the local election authorities it would be on the 2024 general election ballot.

Section 116.200.1 gives any citizen the right to challenge the Secretary's certification decision under section 116.150, whether the Secretary found the petition sufficient or insufficient. Under section 116.200.1, such an action must be brought no later than 10 days after the Secretary's decision. On August 22, the ninth day, Opponents filed the present action. In Count I, Opponents claimed the petition failed to include every constitutional provision and statute that may be altered, invalidated, or otherwise limited or affected should the voters approve Amendment 3. In Count II, Opponents

---

[7] After the circuit court entered its judgment, but while its stay was in effect, the Secretary attempted to reverse his earlier two decisions (the first under section 116.332.4 and the other under section 116.150.1) approving the form of the Amendment 3 petition. In its September 10 order, however, this Court ruled this effort was "a nullity and of no effect" because it came long after the statutory deadline in section 116.150. Proponents' motion for contempt was overruled, and any other pending motions were denied as moot.

12

claimed Amendment 3 violates the single subject requirement of article III, section 50, and article XII, section 2(b) of the Missouri Constitution. Finally, in Count III, Opponents claimed section 116.200.1 is unconstitutional because it does not give them adequate time to challenge the Secretary's certification putting Amendment 3 on the November ballot. Proponents intervened in the case as defendants and filed answers denying each count.

On Friday, September 6, the case was tried to the bench. Late that evening, the circuit court entered its judgment for Opponents on Count I, and ordered Amendment 3 removed from the November ballot. The circuit court stayed the effect of its judgment until Tuesday, September 10, to allow for appeal. On Saturday morning, Proponents filed their notice of appeal to the court of appeals. The court of appeals promptly transferred the matter to this Court, which has exclusive appellate jurisdiction under article V, section 3 of the Missouri Constitution.[8] This Court extended the circuit court's stay until further order of this Court, ordered simultaneous briefing due on Monday, September 9, and set oral argument for Tuesday, September 10. Following argument,

---

[8] Because Opponents properly raised and preserved their constitutional challenge to the validity of section 116.200.1 in the circuit court, this Court has exclusive appellate jurisdiction over Proponents' appeal even though this Court need not reach or resolve the constitutional issue given that the Court was able to reach and resolve the merits of Opponents' other claims within the window for such a challenge under section 116.200.1 and the statutory deadline for ballot changes under section 115.125.3. *Boeving v. Kander*, 496 S.W.3d 498, 503 (Mo. banc 2016) ("Once the case properly invokes this Court's jurisdiction, the ultimate determination that the … merits of the constitutional issue should not be addressed does not retroactively deprive this Court of jurisdiction.") (quoting *Mayes v. Saint Luke's Hosp. of Kan. City*, 430 S.W.3d 260, 170 (Mo. banc 2014)).

this Court on September 10 issued an order reversing the judgment of the circuit court and ordering Amendment 3 to be placed on the November ballot.

## STANDARD OF REVIEW

Before the bench trial, the parties filed joint stipulations of fact. When a case is tried on stipulated facts, this Court needs to determine only whether the circuit court drew the proper legal conclusions from the facts stipulated. *State ex rel. George v. Verkamp*, 365 S.W.3d 598, 600 (Mo. banc 2012). Because there are no disputed material facts and the only questions that were addressed by the circuit court and that are now before this Court are questions of law, this Court's review of the circuit court's judgment is *de novo*. *Id.*

## ANALYSIS

As set forth above, Opponents raised three claims in their petition. The circuit court, relying on *Moore v. Brown*, 165 S.W.2d 657, 633 (Mo. banc 1942), *State ex rel. Halliburton v. Roach*, 130 S.W. 689, 699 (Mo. banc 1910), and section 116.050.2(2), entered judgment for Opponents on Count I, holding Amendment 3 fails to include the "full text of the measure" as required by article III, section 50 in that it fails to identify all statutes that Amendment 3 would repeal if the voters approve it. As explained below, the circuit court's legal conclusions were erroneous, and its judgment on Count I is reversed.

Because the circuit court enjoined the Secretary or others from putting Amendment 3 on the November 2024 general election ballot based on Count I, the circuit court determined it need not review Opponents' remaining two claims and denied those claims as "moot." Nevertheless, Opponents argue that – if the judgment cannot stand on

14

the grounds adopted by the circuit court – this Court should affirm that judgment on the alternate ground that Amendment 3 is insufficient because it violates the constitutional "single subject" requirement in article III, section 50 and article XIII, section 2(b). *See Boeving*, 496 S.W.3d at 504 n.3 (holding that, as respondents to the opponents' appeal, the petition proponents could assert properly raised and preserved constitutional claims as alternative grounds on which to affirm the circuit court's judgment). This Court finds no merit in Opponents' "single subject" claim. Finally, Opponents argue that – if this Court is unable to dispose of this matter before it is too late to remove Amendment 3 from the ballot – this Court should declare section 116.200.1 unconstitutional because it limits a citizen's right to challenge the legal sufficiency of an initiative petition until "after the secretary of state certifies a petition as sufficient." Because the circuit court and now this Court were able to reach the merits of Opponents' claims in Count I and Count II notwithstanding the admittedly tight window created by sections 116.200.1 and 115.125.3, this Court rejects Opponents' Count III as moot.

I.      **The Secretary Properly Approved the Form of Amendment 3 Because Nothing in Article III, Section 50 or Section 116.050.2(2) Requires the "Full Text of the Measure" to Include All Statutes That May Later Be Declared Invalid in Whole or in Part Should the Proposed Constitutional Amendment Be Approved by the People**

Since 1908, the Missouri Constitution has reserved to the people of this state the power to propose amendments to the constitution by initiative petition. That reservation took its present form with the adoption of the 1945 Constitution and, with one immaterial exception, has remained the same for the last 79 years. In all that time, this Court has decided exactly one case involving a challenge to a proposed amendment on the ground

15

that it failed to include the "full text" of the amendment because it did not identify all existing provisions of the **constitution** with which the proposed amendment was "in direct conflict" or "irreconcilably repugnant." This Court has **<u>never</u>** held that the "full text" requirement in article III, section 50 requires a proposed amendment to list all **statutes** that might – if the amendment is adopted – be subsequently declared invalid in whole or in part by a court, and the Court declines to invent such a requirement out of whole cloth now.

A. *Buchanan* **Controls**

As noted above, this Court has decided only one case under the 1945 Constitution stating[9] that the "full text" of a constitutional amendment proposed by initiative petition

---

[9] Because *Buchanan* found no violation of this requirement, it may be a step too far to characterize its analysis and imposition of this requirement a "holding," and this Court at least once has expressed skepticism that article III, section 50 contains such a requirement. *See Boeving*, 496 S.W.3d at 509 ("Nor is this Court willing to construe article III, section 50, to prohibit voters from approving or rejecting a constitutional amendment proposed by initiative petition simply because the proposed amendment **may** (if and when it goes into operation) be construed to alter or affect the application of a preexisting constitutional provision. By its terms, article III, section 50 is concerned only with what a proposed constitutional amendment "'contains,' not with what a proposed constitutional amendment **will or might do** if the voters approve it.") (emphasis added)). *Moore* held this requirement existed and rejected an initiative petition for violating it, but it was decided under the prior constitution and different statutes, and the proposed amendment there explicitly replaced existing constitutional appropriations priorities with its own. *Moore*, 116 S.W.2d at 657. Accordingly, *Moore* is not strictly binding here either. Nevertheless, the relevant provisions are similar enough that *Buchanan*'s reliance on *Moore* was reasonable and – because no party suggests this Court overrule *Buchanan* or the cases on which it relies, and because this Court, like the Court in *Buchanan*, finds no violation of this requirement – the Court will assume *Buchanan*'s discussion correctly articulates the law of this state with respect to this issue. Certainly there can be no argument that this Court has ever held, or even suggested, that article III, section 50 imposes a **more** inclusive repeal disclosure requirement than that articulated in *Buchanan*

16

must identify on each of the petition's signature pages all articles or sections of the existing constitution that would be repealed should the proposed amendment be adopted by the voters. That case was *Buchanan v. Kirkpatrick*, 615 S.W.2d 6 (Mo. banc 1981), and it rejected that claim. Because *Buchanan* is controlling on the question now before this Court, even though it was nowhere cited or even referred to in the circuit court's judgment, it is best to set forth in full the Court's discussion and holding on this issue:

> Appellants next contend that the initiative petition did not list all the **constitutional provisions** being changed by the proposed amendment. This procedural requirement originated in *State ex rel. Halliburton v. Roach*, 230 Mo. 408, 130 S.W. 689 (banc 1910).[10] In the *Halliburton* opinion, Judge Fox writing for the Court stated,

and, specifically, this Court has never required a proposed constitutional amendment include statutes that may be affected if the proposal is approved.

[10] Though *Buchanan*'s reliance on *Moore* was reasonable, its reliance on *Halliburton* was manifestly less so. The overriding and controlling issue in *Halliburton* was whether the initiative proposed a constitutional amendment or a statute. *Halliburton*, 130 S.W. at 694. Given our century-plus experience with the initiative process during which many dozens of proposed statutes or constitutional amendments have been submitted to the voters and many dozens more have been circulated but failed to secure enough signatures, it may be difficult to imagine the degree of judicial suspicion (if not hostility) surrounding this process in the years immediately following the 1908 amendment adding the initiative process to the 1875 Constitution. That is the context in which *Halliburton* was decided, and the outcome of that case turned on the Court's conclusion that the proposal – although by its own terms denominated a constitutional amendment – was in fact a statutory proposal and rejected the petitions on that basis. *Id*. ("The petitions themselves as presented to the respondent [Secretary of State] clearly indicate that the so-called constitutional amendment is nothing more nor less than a temporary legislative act."). No one argued the petitions should be rejected because they failed to identify existing constitutional provisions that would be repealed. Rather, in support of its conclusion that the petitions proposed legislative acts and not constitutional amendments, the Court noted the constitution already had a provision thoroughly addressing the process for redrawing senatorial district lines. The Court reasoned, if the petitions really were constitutional amendments, then they must be seeking to change or repeal the existing redistricting provision in the constitution. *Id*. at 695. Because the petitions made no mention of that existing provision, the Court held the petitions' true character was

17

> If (an amendment is) submitted through the initiative, manifestly that provision as contained in the initiative and referendum amendment that 'the petition shall include the full text of the measure so proposed' must be complied with. In other words, if it is truly an amendment to the Constitution, the full text of the amendment ***and what provision of the Constitution it undertakes to amend*** must be embraced in the petition.

230 Mo. at 436-37, 130 S.W. at 695, (emphasis added).

In *Moore v. Brown*, 350 Mo. 256, 165 S.W.2d 657 (banc 1942), this Court interpreted the *Halliburton* requirement[11] as follows:

---

revealed because it proposed legislative acts for the one-time drawing of district lines and not constitutional amendments changing for the future the procedures used to draw those lines. *Id*. ("If this is the purpose, and beyond dispute it is, then in our opinion it must logically follow that the so-called proposed constitutional amendment is not an amendment to the Constitution within the purview of the provisions of the initiative and referendum provision in the Constitution, and deals with a subject that is entirely foreign to the subject of an amendment to the provision of the Constitution which treats of the matter of dividing the senatorial districts in this state.").

[11] *Moore* misread *Halliburton* when it stated: "On this [implied repeal disclosure] theory the [*Halliburton*] decision held the initiative petitions were legally insufficient because they failed to disclose that Sec. 7 as well as Sec. 11 of Art. IV [of the 1875 Constitution] was being amended." *Moore*, 165 S.W. at 660. Just the opposite was true. Because there was nothing in the *Halliburton* petitions that would have altered or invalidated those existing provisions of the constitution, *Halliburton* holds the petitions proposed only statutes (setting out the lines for a one-time redistricting) and not constitutional amendments (changing for all future redistricting efforts the constitutional process for drawing such lines), and rejected the petitions on that basis alone. *Halliburton*, 130 S.W. at 695. In addition to overstating what *Halliburton* did and did not decide, *Moore* candidly "concede[d] the *Halliburton* case went to the verge of construction in giving Sec. 12287 [i.e., in *Halliburton*, a statute and not the constitution was the source of the "full and correct … text of the measure" requirement] the meaning it did." *Moore*, 165 S.W. at 663. The Court went on to say that it would "abide by the [*Halliburton*] ruling, although the constitutions of several states contain [similar] provision[s], … and we have not found in any one of them a decision like the *Halliburton* case, construing such language as requiring the measure to specify the Articles and Sections which will be changed by it." *Id*. Again, as noted above, the correctness of *Halliburton*, *Moore*, or, ultimately, *Buchanan* are not before us. There is no conceivable argument that article III, section 50 requires ***more*** than *Buchanan* suggests, i.e., that it requires a proposed constitutional amendment to include all existing constitutional provisions ***and statutes*** with which the proposal is in "direct conflict" or is "irreconcilably repugnant," and there

18

We have just indicated the views that existing constitutional provisions may be amended or repealed by implication through an initiative amendment. But in any case such repeals are not favored, and there must be irreconcilable repugnance between the two .... All the more should this be true when such repugnancy must be pointed out in the abstract, and not in a pending controversy based on facts. Time alone can ferret out all the consequential and remote conflicts between statutes or constitutional provisions in all their implications. *We therefore think the requirement in the Halliburton case, that the proposed amendment disclose the constitutional provisions it seeks to change, refers only to cognate provisions which are in direct conflict as were the ones in that case*.

350 Mo. at 269, 165 S.W.2d at 663.

*Moore* does not require the makers of an initiative petition to "ferret out" and to list all the provisions which could possibly or by implication be modified by the proposed amendment. It only requires them to list provisions which would be in direct conflict. This is a reasonable requirement because it would succeed in substantially bringing out the effect of the proposed amendment without placing an excessive burden on those seeking change by way of the initiative. Any amendment dealing with tax limitations is bound to have widespread effects, because money affects every aspect of state and local government. That does not mean an initiative petition must descend to the level of detail advocated by appellants. To make such a requirement would tend to stifle the constitutional initiative process. It is sufficient if the petition points out "***cognate provisions*** which are in direct conflict." The Missouri Constitution does not require, as did the Michigan Constitution referred to in the *Moore* case, that along with the full text of the amendment there should be published "'any existing provisions of the constitution which would be altered or abrogated thereby.'" 350 Mo. at 270, 165 S.W.2d at 664. There is no such requirement for our initiative provisions. That is not necessary in order to give the prospective signer a fair realization of what he is being asked to sign. He is interested in the broad aspects of the proposed amendment, not the minute details.

Appellants cite various ***constitutional provisions*** that will be changed or affected by the amendment. Nowhere do they allege, and nowhere do we see, any provisions not listed on the petitions that are in direct conflict with

---

is no need to re-examine *Buchanan*'s statement that article III, section 50 requires the "full text" of the proposal to include all existing constitutional provisions in direct conflict because Amendment 3 does not violate it.

19

or are irreconcilably repugnant to the Constitution. Following the reasoning in *Moore*, we must rule against appellants on this point.

*Buchanan*, 615 S.W.2d at 14-15 (emphasis added).

Even a cursory reading of *Buchanan*, let alone a careful one, shows the only requirement under article III, section 50 that opinion discusses is a requirement that the "full text" of the proposed constitutional amendment identify those existing cognate ***constitutional provisions*** "that are in direct conflict with or are irreconcilably repugnant to the [proposed amendment to the] Constitution." *Id*. at 15. Nowhere in *Buchanan* – or in *Moore* or *Halliburton*, for that matter – is there even a hint of a suggestion that article III, section 50 (or its predecessor constitutional provision and related statutory provisions) requires a proposed constitutional amendment to identify all ***statutes*** that later may be declared invalid in whole or in part if the voters approve the constitutional amendment. Accordingly, the Court now holds article III, section 50 imposes no such requirement.[12]

---

[12] *State ex rel. Scott v. Kirkpatrick*, 484 S.W.2d 161 (Mo. banc 1972), offers no assistance to Opponents and, in fact, provides an instructive comparison. In that case, the Court held: "That the petitions as filed fail to conform to such constitutional dictates [in article III, section 50] is obviously apparent for they contain no enacting clause whatever." *Id*. at 162. The requirement for – and exact phrasing of – such an "enacting clause" for an initiative petition proposing a constitutional amendment is expressly set forth in article III, section 50. The requirement discussed by *Buchanan*, i.e., that such a petition must list the constitutional provisions the measure would repeal, is – if it exists at all – implied from the requirement petitions set forth the "full text" of the measure. It would be nonsensical to infer a constitutional requirement that the "full text" of a constitutional amendment must include all constitutional provisions that would be repealed somehow also includes an obligation to set forth all statutes that would be repealed. The Court holds article III, section 50 imposes no such requirement.

20

To the extent *Buchanan* holds article III, section 50 requires a constitutional amendment proposed by initiative to identify in the petition itself the existing cognate constitutional provisions that are in direct conflict with or are irreconcilably repugnant to the proposed amendment, Amendment 3 easily meets that requirement. In fact, in its lengthy brief to this Court, Opponents devote only a single paragraph and footnote to their argument that Amendment 3 fails to identify existing constitutional provisions that would be repealed if the voters approve the proposal.

They contend Amendment 3 would "repeal": (a) that portion of article I, section 2, providing that "all persons are created equal and are entitled to equal rights;" (b) that portion of article I, section 10, providing that "no person shall be deprived of life, liberty or property without due process of law;" (c) article I, section 14, providing that "the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character;" and (d) article III, section 38(d).2(1) and (2) providing that "[n]o person may clone or attempt to clone a human being" and "[n]o human blastocyst may be produced by fertilization solely for the purpose of stem cell research." Opponents do not attempt to show – other than by mere assertion – that Amendment 3 (if approved by the voters) would be in "direct conflict" with or "irreconcilably repugnant" to any of these provisions. Certainly, the circuit court found no such utter and complete conflicts with any existing constitutional provision, and this Court holds there are none.

Nearly every case involving one constitutional provision also involves one or more others. The business of harmonizing such provisions and giving each of them all

21

the effect the people intended them to have is the business of courts in general and this Court in particular. Such analyses are performed with extreme care and, one hopes, with delicate precision. This is in stark contrast with the meat axe approach Opponents would have the Court employ. *Moore* cautioned against such an approach, and *Buchanan* incorporated that warning into its discussion:

> We have just indicated the views that existing constitutional provisions may be amended or repealed by implication through an initiative amendment. But in any case such repeals are not favored, and ***there must be irreconcilable repugnance*** between the two.... ***All the more should this be true when such repugnancy must be pointed out in the abstract, and not in a pending controversy based on facts.*** Time alone can ferret out all the consequential and remote conflicts between statutes [when an initiative proposes a statute] or constitutional provisions [when an initiative proposes a constitutional amendment] in all their implications. We therefore think the requirement in the *Halliburton* case, that the proposed amendment disclose the constitutional provisions it seeks to change, refers only to ***cognate provisions*** which are in ***direct conflict*** as were the ones in that case.

*Buchanan*, 615 S.W.2d at 15 (emphasis added) (quoting *Moore*, 165 S.W.2d at 663).

Suffice it to say, therefore, that nothing in Amendment 3 expressly rescinds any existing provision in the constitution and nothing about Amendment 3 is in such direct conflict with or is irreconcilably repugnant to the equal protection clause, the due process clause, the open courts clause, or the Missouri Stem Cell Research and Cures Initiative in article III, section 38(d) such that it fairly can be said Amendment 3 repeals and replaces those sections in all but name. *See Buchanan*, 615 S.W.2d at 15 (noting it is unnecessary to "list all the [constitutional] provisions which could possibly or by implication be modified by the proposed amendment" but, instead, only those that "would be in direct conflict"). For these reasons, the circuit court erred in entering judgment for Opponents

22

on Count I, and this Court enters judgment for Proponents on that claim as well as the other two. *See* Rule 84.14.

**B.** **Section 116.050.2(2) Does Not – and, in Any Event, Could Not – Impose a More Onerous Implied Repeal Disclosure Requirement Than Does Article III, Section 50**

In the preceding section, this Court holds article III, section 50 requires no more than that a proposed constitutional amendment initiative petition identify all existing cognate constitutional provisions with which the proposal is in direct conflict or to which it is irreconcilably repugnant, and Amendment 3 does not violate that requirement. In an effort to avoid that obvious result, Opponents rely on section 116.050.2(2), and it appears the circuit court based its judgment (at least in part) on that statute. Section 116.050 states:

> 1. Initiative and referendum petitions filed under the provisions of this chapter shall consist of pages of a uniform size. Each page, excluding the text of the measure, shall be no larger than eight and one-half by fourteen inches. Each page of an initiative petition shall be attached to or shall contain a full and correct text of the proposed measure. Each page of a referendum petition shall be attached to or shall contain a full and correct text of the measure on which the referendum is sought.
>
> 2. The full and correct text of all initiative and referendum petition measures shall:
>
>   (1) Contain all matter which is to be deleted included in its proper place enclosed in brackets and all new matter shown underlined;
>
>   (2) Include all sections of existing law or of the constitution which would be repealed by the measure; and
>
>   (3) Otherwise conform to the provisions of Article III, Section 28 and Article III, Section 50 of the Constitution and those of this chapter.

§ 116.050.

23

### 1. A Plain Reading of Section 116.050.2(2) Refutes Opponents' Argument

Opponents argue this statute requires the initiative petition for Amendment 3 to identify all sections of existing statutes **and** all constitutional provisions the measure would repeal. But that is not even what section 116.050.2(2) says. It says the petition shall include "all sections of existing law **or** of the constitution which would be repealed by the measure[.]" (Emphasis added). Because section 116.050 applies to (1) referendum petitions (by which voters seek to reject a bill passed by the general assembly), (2) initiative petitions proposing a statute for the voters' approval, and (3) initiative petitions proposing a constitutional amendment for the voters' approval, the requirements of subsection 2 must be stated in terms applicable to them all.

Leaving aside the highly dissimilar referenda petition (when the bill originates in the general assembly), the plain language reading of subdivision 2(2) of section 116.050.2 is that initiative petitions proposing a *statute* must include all sections of existing *statutes* that would be repealed by the measure, and initiative petitions proposing a *constitutional amendment* must include all sections of the existing *constitution* that would be repealed by the measure. Nothing more. Had the General Assembly intended every initiative petition to include both, it would have said "and," not "or." But it did not, and this Court will not change the words it chose. Statutes bearing on the people's reserved power of initiative must be "liberally construed so as not to interfere with the initiative process." *Rekart*, 639 S.W.2d at 608 (citing *State ex rel. Voss v. Davis*, 418 S.W.2d 163, 167 (Mo. banc 1967)). This Court's holding that section 116.050.2(2)

24

requires, at most, what *Buchanan* states is required by article III, section 50 is such a construction. *See Missourians to Protect the Initiative Process v. Blunt*, 799 S.W.2d 824, 827 (Mo. banc 1990) ("*MPIP*") ("Statutes that place impediments on the initiative power that are inconsistent with the reservation found in the language of the constitution will be declared unconstitutional.").

This reading of section 116.050.2(2) not only comports with the plain language of the provision's use of the word "or," and is consistent with what *Buchanan* states is required by article III, section 50 for initiative petitions proposing a constitutional amendment (and what the court of appeals held in *Knight v. Carnahan*, 282 S.W.3d 9, 18-19 (Mo. App. 2009), is required by article III, section 50 for initiative petitions proposing a statute), but this reading also comports with the clear and unambiguous meaning of the word "repeal." In *Knight*, the court of appeals construed the plain language of section 116.050.2(2) and noted that:

> Repeal means [t]he abrogation or annulling of a previously existing *law* by the enactment of a subsequent *statute* which declares that the former *law* shall be revoked and abrogated (which is called 'express' repeal), or which contains *provisions so contrary to or irreconcilable* with those of the earlier *law* that only **one of the two statutes can stand in force** (called 'implied' repeal).

*Knight*, 282 S.W.3d at 19 (quoting *Black's Law Dictionary* 1299 (6th ed. 1990)).

Accordingly, *Knight* holds new statutes can "repeal" by implication prior statutes (though such a conclusion is highly disfavored). And, *Buchanan* states a new constitutional amendment can implicitly "repeal" a previously existing constitutional provision. But nothing in the plain language of section 116.050.2(2) or in any of our

25

cases, suggests a proposed constitutional amendment can (if approved) implicitly "repeal" all statutes that are, in whole or in part, in conflict with or irreconcilably repugnant to the constitutional amendment. The function of declaring a statute invalid under a constitutional provision (new or old) is a judicial function, and is in no way the same or similar to the legislative act of "repeal." *See State ex rel. Missouri S. R. Co. v. Pub. Serv. Comm'n*, 168 S.W. 1156, 1164 (Mo. banc 1914) ("The repeal of a statute is a legislative act. To declare a statute unconstitutional is a judicial act.").

The dissenting opinion suggests *Marsh v. Bartlett*, 121 S.W.2d 737 (Mo. banc 1938), which was not cited by any of the parties or relied upon by the circuit court, somehow aids the Opponents because it states that a constitutional amendment can "repeal" a statute. The Court disagrees. First, *Marsh* has nothing to do with the statutory construction of section 116.050.2(2), which had not been enacted at that time. Rather, *Marsh* is a habeas corpus decision involving a man convicted and put in jail for catching a bass out of season. *Id*. at 740. The man argued the statute under which he was convicted was no longer in force because it had been repealed by the 1936 constitutional amendment (proposed by initiative petition) creating the Conservation Commission and, more specifically, by a bass season regulation the Commission promulgated. *Id*. After much discourse about weighty matters involving the powers of administrative agencies, the Court held the statute under which Marsh was convicted had been repealed by the express language of the constitutional amendment, which stated that "all existing laws inconsistent herewith shall no longer remain in force or effect." *Id*. There was another statute, which the Court concluded had not been repealed, imposing criminal penalties for

26

violations of Commission bass season regulations, but that was not the statute under which Marsh had been convicted. As a result, the Court ordered him discharged. *Id*. at 744-45.

At the end of this lengthy opinion (which bears all the signs of the highly suspect practice of manufacturing "test case" litigation), the Court stated:

> With statutes inconsistent with Amendment No. 4 we have nothing to do. Such as were inconsistent, including said section 8270, were expressly repealed by that instrument. Repeal in that manner is all–sufficient, for a statute may be nullified, in so far as future operation is concerned, by a constitution or a constitutional amendment as well as by statute; and the constitution or the amendment, as the highest and most recent expression of the lawmaking power, operates to repeal, not only all statutes that are expressly enumerated as repealed but also all that are inconsistent with the full operation of its provisions. 12 C.J., sec. 97, pp. 725, 726. A provision may be so framed, however, that, while legislation is necessary to put into effect its affirmative principles, it repeals existing statutes inconsistent with it. *Id*., pp. 727–728, sec. 4.

*Marsh*, 121 S.W.2d at 745.

The Court holds *Marsh* sheds no meaningful light on the questions before it here, regardless of its indiscriminate and – so far as can be determined – entirely singular use of the term "repeal." This is so for a variety of reasons. First, the Conservation Commission amendment was in effect, and no party contended it should not have been submitted to the voters because it failed to identify either existing constitutional provisions or existing statutes that were in direct conflict with the amendment or were irreconcilably repugnant to it. Second, the Conservation Commission amendment expressly stated that inconsistent statutes would no longer be in force or effect, while Amendment 3 has no such provision. Third, the Conservation Commission amendment

27

does not use the term "repeal," the Court in *Marsh* did. The way that term is used in the *Marsh* contradicts the plain language meaning set forth in *Black's Law Dictionary*. Fourth, none of the parties nor the Court addressed the requirements of article III, section 50 or its predecessor initiative process provision in effect in 1936. And fifth, none of the parties or the Court could have addressed what section 116.050.2(2) requires because the legislature would not enact that statute for another 61 years. For these reasons, it should come as no surprise that *Marsh*'s use of the term "repeal" was less than precise and offers no persuasive (let alone binding) precedent for the construction of that word in section 116.050.2(2). Whatever the effect of the express provision in the Conservation Commission amendment, a "repeal" is a legislative act that removes the repealed section immediately, altogether, and for all purposes. *State v. Pliemling*, 645 S.W.3d 86, 90 (Mo. App. 2022) ("Repeal of a statute and replacement is a legislative act that terminates the existence of the prior statute." (citing *Humane Soc'y of United States v. State*, 405 S.W.3d 532, 536, 538 (Mo. banc 2013)).

In this case, able counsel for Opponents conceded at oral argument – as indeed she had to do – that Amendment 3 (if approved) would have no such effect on any statute unless and until a party timely and properly asserted the statute was unconstitutional under Amendment 3 in a case in which the validity of that statute was germane, and a court of competent jurisdiction declared the statute invalid in whole or in part. Accordingly, whatever effect Amendment 3 (if approved by the voters) might have on various and sundry statutes, this Court holds it will have no effect on them unless and until such an effect is declared by the courts.

28

Finally, it is worth noting the absurd effects that would ensue if Opponents' reading of section 116.050.2(2) were to prevail. Section 116.050 does not require initiative petitions to "identify" all sections of existing law or of the constitution the measure would repeal. Instead, it requires the initiative petition to "include" all such sections. Opponents claim that more than a dozen such sections exist, all of which would – if Opponents' reading of section 116.050.2(2) were to prevail – have to have been set forth in full, in brackets, and attached to every signature page of the petition. In an effort to avoid this absurd result, Opponents argue that a simple "disclaimer" would suffice. But such a "disclaimer" is described nowhere in section 116.050, much less is it implicitly required by article III, section 50.

The circuit court quoted such a "disclaimer" from the "Clean Missouri" initiative petition, enacted in 2018 as Amendment 1, which read:

> NOTICE: You are advised that the proposed constitutional amendment **may change, repeal, or modify** by implication or **may be construed by some persons to change, repeal or modify** by implication, the following Articles and Sections of the Constitution of Missouri: Article I, Section 8 and the following Sections of the Missouri Revised Statutes: Sections 105.450 through 105.496 and Sections 130.011 through 130.160. The proposed amendment revises Article III of the Constitution by amending Sections 2, 5, 7, and 19 and adopting three new sections to be known as Article III Sections 3, 20(c), and 20(d).

(Emphasis added).

Nothing in article III, section 50 requires such speculative statements be included in initiative petitions. *See Buchanan*, 615 S.W.2d at 15 ("The Missouri Constitution does not require, as did the Michigan Constitution referred to in the *Moore* case, that along with the full text of the amendment there should be published 'any existing provisions of

29

the constitution which would be altered or abrogated thereby.'" (quoting *Moore*, 165 S.W.2d at 664)). Nothing in section 116.050 comes close to permitting such a statement, and with good reason. The foregoing "disclaimer" does not say what the measure *will* do, but only what it *may* do or, worse, what "some persons" may *think* it does. Moreover, it commingles the provisions it says "may" be repealed with those that "may" be changed or modified, which *Buchanan* clearly states need not be included. *Id*. (stating it is unnecessary to "list all the [constitutional] provisions which could possibly or by implication be *modified* by the proposed amendment" but, instead, only those that "would be in direct conflict" (emphasis added)). Finally, Opponents fail to explain why either article III, section 50 or section 116.050 would require a "disclaimer" that simply regurgitates a list of statute numbers that mean nothing unless one has ready access to the text of those statutes, which Missourians considering a petition on some street corner somewhere do not. That Opponents would resort to such unauthorized, unspecific, and potentially misleading devices, and that the circuit court should focus its analysis on one, indicates the weakness of Opponents' argument that section 116.050.2(2) requires more than article III, section 50 requires. This Court holds it does not.

> **2. If Section 116.050.2(2) Required More Than *Buchanan* States Is Required by Article III, Section 50, Section 116.050.2(2) Would Be Unconstitutional**

This Court has held above that section 116.050.2(2) does not – by its plain language – require any more than what *Buchanan* and *Knight* state article III, section 50 requires, i.e., that (1) proposed constitutional amendments identify all existing constitutional provisions that are in direct conflict with or are irreconcilably repugnant to

30

the amendment if approved by the voters, and (2) proposed statutes identify all existing statutes that are in direct conflict with or are irreconcilably repugnant to the amendment if approved by the voters.[13] Even if section 116.050.2(2) plainly and unambiguously provided that initiative petitions for constitutional amendments must include all statutes that would later be declared invalid in whole or in part by the amendment (if approved), which it does not, such a statute would be unconstitutional under this Court's precedents.

All properly enacted statutes enjoy, in the first instance, a presumption of constitutional validity. *Rekart*, 639 S.W.2d at 608. "However, when such statutes interfere with or impede a right conferred by the constitution, the statute must be held unconstitutional." *Id*. To avoid having to reach the question of constitutional validity, statutes bearing on the people's reserved power of initiative must be "liberally construed so as not to interfere with the initiative process." *Id*. If this is not possible, and the statute "interferes with and impedes the initiative power," this Court will not hesitate to declare that statute unconstitutional. *Id*. (holding section 116.110 unconstitutional to the extent it allowed signatures to be withdrawn from a petition already submitted); *see also*

---

[13]   Section 116.050 may not even require that much. The concurring opinion offers a construction of this statute that is reasonable in scope, consistent with the plain language of the statute, and properly modest as befitting the suspect and subordinate role statutory procedures play regarding the people's reserved power of initiative petition. *See* art. III, sec. 49 ("The people reserve power to propose and enact or reject laws and amendments to the constitution by the initiative, ***independent of the general assembly***[.]) (emphasis added). The Court may very well have adopted this construction if it were necessary to do so, but it is not. For the present, it is necessary only to reject the construction Opponents offer; hold the most section 116.050.2(2) can do is require what *Buchanan* states article III, section 50 requires; and, further, hold Amendment 3 does not violate that requirement.

31

*State ex rel. Upchurch v. Blunt*, 810 S.W.2d 515, 517 (Mo. banc 1991) (declaring section 116.332.1 invalid because it restricted the time in which sample initiative petitions could be submitted even though article III, section 50 and article XIII, section 2(b) implicitly permit new petitions any time after the general election and four months prior to the next). *Cf. No Bans on Choice v. Ashcroft*, 638 S.W.3d 484, 491-92 (Mo. banc 2022) (holding sections 116.180 and 116.334.2 invalid because they "interfere with and impede" the right of referendum as a practical matter by imposing "procedural formalities" limiting the already short time citizens have to gather signatures) (citing *Rekart*, 639 S.W.2d at 608).

Here, if section 116.050.2(2) requires – as Opponents argue – that the "full and complete" text of the proposed constitutional amendment must include every constitutional provision and every statute the proponents must perfectly predict would later be declared invalid if the measure is adopted, that statute would be unconstitutional because it would "impair and impede" the people's reserved power of initiative. In fact, it is hard to imagine how a statute could impair and impede the initiative process more. If Opponents' construction were to prevail, section 116.050.2(2) would require proponents to comb through the Missouri Constitution and 16 (current) volumes of the Revised Statutes of Missouri in an effort to predict perfectly every section that – at some uncertain point in the future and under every factual circumstance one can imagine – courts would declare invalid in whole or in part, as applied or on its face, and then "include" every one of those sections (within brackets, of course) on or as an attachment to every page of the petition. And, as if that were not bad enough, the proponent would have to compile these

32

sections before circulating the petition for signatures under the ominous threat that – if a reviewing court's list of such affected sections (compiled in an entirely hypothetical, advisory and, quite often expedited manner mere weeks from the election) contains one more section than proponents included – or one fewer – Opponents argue such a proposed amendment would have to be stripped from the ballot with no possibility for the proponent to correct this "error." It seems reasonable to expect that few – if any – initiative petitions could survive under such a statute.

This Court does not have to hold section 116.050.2(2) unconstitutional for imposing such an unreasonable interference and impediment to the initiative process, however, because – by its plain and unambiguous language – it does not require any of these things. Accordingly, Opponents' proposed construction importing such requirements into section 116.050.2(2) is rejected, and this Court holds only that this statute requires – at most – no more than *Buchanan* and *Knight* state is required by article III, section 50.

## II. Amendment 3 Does Not Contain More Than a Single Subject[14]

Having rejected Opponents' first claim, this Court finds even less merit in their second. Opponents assert Amendment 3 violates the "single subject" requirement for

---

[14] The judicial breeze has blown both ways on the question of whether the single subject requirement in article III, section 50, and article XIII, section 2(b), is a matter of form or substance. *See MPIP*, 799 S.W.2d at 827-28 (reviewing cases and deciding, ultimately, that the form/substance dichotomy is not found in the language of the constitution and allowing for pre-election review of single subject claims as well as post-election review). Setting aside for the moment that such a challenge can be brought after an election – a settled question, *see United Gamefowl Breeders Ass'n of Mo. v. Nixon*, 19 S.W.3d 137, 143 (Mo. banc 2000) (holding "[t]hese [single subject] requirements apply to initiative

33

proposed constitutional amendments found in article III, section 50, and article XIII, section 2(b). This claim must fail, however, because the provisions of Amendment 3 clearly relate to one subject, which is stated in amendment itself, i.e., the right to reproductive freedom.

Article III, section 50 states in part: "Petitions for constitutional amendments shall not contain more than one amended and revised article of this constitution, or one new article which shall not contain more than one subject and matters properly connected therewith[.]" [15] Article XIII, section 2(b) contains an almost identical prohibition against a proposed constitutional amendment having more than a single subject. [16]

To determine if a proposed constitutional amendment satisfies the single subject requirement, this Court will review the provisions of the proposal to see if "all matters included relate to a readily identifiable and reasonably narrow central purpose." *Comm.*

---

propositions [and may be reviewed] both before and after approval by the voters) – it seems the better reasoned view is that the single subject requirement is a matter of form. When a proposed constitutional amendment violates this requirement, there are one or more provisions related to Subject A and one or more related to Subject B, but no subject to which all the provisions relate. There is no constitutional defect in the substance of any of these provisions, and no constitutional bar to either group of provisions being proposed and enacted on their own. Instead, the defect is that both groups of provisions are proposed in the same amendment, which makes this a matter of form.

[15] One might reasonably assume, reading this provision's plain language and applying ordinary rules of grammar and punctuation, that the "single subject" requirement applies only when a proposed amendment adds a new article to the constitution and not when it merely amends or revises an existing article. This argument was rejected, however, in *MPIP*, 799 S.W.2d at 829-30.

[16] Article XIII, section 2(b) states in part: "No such proposed amendment shall contain more than one amended and revised article of this constitution, or one new article which shall not contain more than one subject and matters properly connected therewith."

34

*for A Healthy Future, Inc. v. Carnahan*, 201 S.W.3d 503, 511 (Mo. banc 2006); *United Gamefowl Breeders*, 19 S.W.3d at 140 (stating a proposed constitutional amendment has "one subject if all of its provisions are properly connected with a central purpose"). In conducting this inquiry, the proposal must be "liberally and nonrestrictively construed so that provisions connected with or incident to effectuating the central purpose of the proposal will not be treated as separate subjects." *MPIP*, 799 S.W.2d at 830.

The purpose of Amendment 3 is clear: to protect the right to reproductive freedom. Section 1 of the amendment explicitly states that purpose and, in this case, that purpose is also the constitutional "single subject" to which all the other proposed provisions relate or are properly connected. Section 2 of the amendment establishes and defines the right, and the remaining six sections merely explain how the right is to be implemented and protected. Sections 3 and 4 serve to protect the right by establishing the standard for judicial review. Sections 5 and 6 also work to protect the right by prohibiting the prosecution or discrimination of a person for obtaining, providing, or assisting in reproductive healthcare. Finally, section 7 is a severability clause, and section 8 provides definitions for terms used in the amendment.

To support their argument that Amendment 3 embraces more than one subject, Opponents argue – with metronomic insistence – that Amendment 3 could affect the validity of a large (but nowhere exhaustively identified) number of statutes.[17] This Court,

---

[17] Opponents also point to Amendment 3's language as being so broad it encompasses more than one subject. According to Opponents, the use of the terms "including but not limited to" and "all matters relating to" anticipate applications that have not been considered and reach more than one subject. In support of this argument, Opponents cite

35

however, has made it clear that "[a] measure may encompass one subject, and yet effect several changes and incidents, if all are germane to its one controlling purpose." *United Gamefowl Breeders*, 19 S.W.3d at 140.

It may be conceded for purposes of Opponents' argument that, if if the voters approve Amendment 3, it likely will affect, to some degree or other, some uncertain number of statutes if – but only if and only when – such statutes are challenged in proceedings in which the validity of those statutes is unavoidable and a court of competent jurisdiction declares them invalid. But this is not at all relevant to, far less dispositive of, whether Amendment 3 contains more than one subject and matters properly connected thereto in violation of article III, section 50 and article XIII, section 2(b). This is particularly so when the proposed amendment is "liberally and nonrestrictively construed" so that provisions related to (or incident to effectuating) the purpose of the proposal are not misidentified as separate subjects. *MPIP*, 799 S.W.2d at 830; *see also Comm. for A Healthy Future*, 201 S.W.3d at 511 ("When reviewing a single subject challenge to an initiative petition, this Court must liberally and non-restrictively construe the petition in such a way that the provisions connected with or incident to the

---

*Sermchief v. Gonzales*, 660 S.W.2d 683 (Mo. banc 1983). This case, however, dealt with the definition of "unauthorized practice of medicine" found in a statute and had nothing to do with the number of subjects in a ballot initiative. The fact that Amendment 3 does not list every single type of reproductive care that the right would protect does not necessitate a finding the amendment embraces more than one subject. In fact, such language indicates the amendment is attempting to embrace that single subject as fully as possible. The language of the amendment makes it clear it protects only the right to reproductive freedom, and every practice protected under the amendment must, by definition, be related to that single subject.

central purpose of the proposal are harmonized and not treated as separate subjects.").

Here, there is no doubt that all of Amendment 3's provisions relate to or are properly connected with the single subject stated in its purpose.

The remainder of Opponents' arguments are of the same ilk and fail for the same reasons. Over and again, Opponents claim Amendment 3 will have profound effects and, therefore, must have more than one subject. But the latter in no way follows from the former. On this, as with Count I, *Buchanan* is instructive if not binding and dispositive. There, the Court was considering a single-subject challenge to the initiative petition proposing what has since become known as the Hancock Amendment. *Buchanan*, 615 S.W.2d at 15. It may be stated without fear of exaggeration that no constitutional amendment has had a more profound impact on every part of government at every level. Yet, this Court had no difficulty finding that all its varied provisions – many of which had little or nothing to do with each other – all related to the single subject of limiting taxes and expenditures. *Id*. The constitutional touchstone is not whether all the provisions in the proposal relate to each other, but instead whether they each relate to a reasonably specific purpose. *Byrd v. State*, 679 S.W.3d 492, 494 (Mo. banc 2023). Here, all of Amendment 3's provisions relate to its purpose of protecting the right of reproductive freedom; therefore, this Court holds Amendment 3 complies with the single-subject requirement of article III, section 50, and article XIII, section 2(b). *Cf. Nevadans for Reproductive Freedom v. Washington*, 546 P.3d 801, 807 (Nev. 2024) (rejecting substantially similar "single subject" challenge, holding the proposal "has the

37

single subject of establishing a fundamental right to reproductive freedom" and all provisions fairly relate to that subject).

### III. Opponents' Count III Rests on an Untested Premise and, In Any Event, Is Moot Because Their Claims Have Been Fully Examined and Rejected On Their Merits

Opponents argue that – if this Court lacks time to complete this lawsuit and, as a result, Amendment 3 remains on the ballot – this Court should declare section 116.200.1 unconstitutional because it unfairly limited their time to challenge the Secretary's decision to certify Amendment 3 as sufficient to be on the ballot at the general election. This Court need not reach or decide this claim because the circuit court and this Court were able to complete the review of Opponents' claims in Count I and Count II within the time permitted. Because Opponents were not injured by the defects they perceive in this statute, they cannot be heard to complain about them, and this Court denies Opponents' third and last claim as moot.

As noted above, the last day for the Secretary to certify initiatives as sufficient or insufficient under section 116.150 is the thirteenth Tuesday before the election. Section 116.200.1 then gives any citizen 10 days to file an action contesting that decision. But, section 115.125.3, RSMo Supp. 2018, prohibits changes to the ballot after the eighth Tuesday before the election. The result is that, if the Secretary waits until the last day to certify a particular petition as sufficient (as he did with Amendment 3), a citizen seeking to challenge that decision will have only 28 days to bring the challenge, get it tried and a final judgment entered, and prosecute an appeal if necessary. Though this very tight timetable has been sufficient to fully resolve the merits of prior claims in prior election

38

cycles, and it was sufficient for the circuit court and this Court to fully resolve Opponents' claims on their merits here, Opponents were not exaggerating to suggest that this time frame may not be enough some day and that a meritorious challenge under 116.200.1 may not be completed in time to remove an invalid initiative proposal from the ballot or to add a proper and sufficient initiative proposal to it. In either case, it would be section 115.125.3, RSMo Supp. 2018, that would be preventing a remedy, but plainly the late start under section 116.200.1 would be a contributing factor. To create a squeeze, a vise needs two jaws.

But therein lies the problem in, or at least the implied but wholly untested premise of, Opponents' argument. They claim they could not have brought their challenge to the form of the Amendment 3 petition any earlier than the day the Secretary certified Amendment 3 for the ballot, which was the thirteenth Tuesday before the election. But, under section 116.332.4, the Secretary made a "final decision" that the form of the petition for Amendment 3 was proper 17 months ago, in March 2023. The form of the petition has not changed, and Opponents had (or easily could have had) access to that form as soon as the Secretary approved it, if not before.

Opponents claim they had no way to challenge the Secretary's decision regarding the form of the Amendment 3 petition until his final certification of that proposed amendment on August 13, 2024. That may be true or not, but no one knows because Opponents did not try.

If the Secretary makes a "final decision" under section 116.332.4 that the form of a petition is deficient, a proponent can make the necessary changes or, if unable or

39

unwilling, it seems likely that proponent could seek judicial review of the Secretary's determination by seeking an injunction, a declaratory judgment, a writ of mandamus, or an action for judicial review of a final administrative decision under section 536.150. An opponent could try the same if the opponent believe the Secretary improperly found the form was proper, and, if the opponent is successful, the proponent would have time to correct the petition.

On the other hand, if the courts rebuff an opponent's attempt to seek early review of the Secretary's decision that a petition's form was proper, then that opponent will be safe alleging that the vise between sections 115.125.3, RSMo Supp. 2018, and 116.200.1 is real and that a constitutional challenge to those statutes will at least be ripe should the courts be unable to complete their review of that opponent's claim under section 116.200.1 before the eighth Tuesday prior to the election. Unless an opponent attempts early review, however, as Opponents failed to do in this case, any complaint about the short time frame attending an action under 116.200.1 will face claims of laches (founded or not) and labor under the suspicion of what might have happened had the claim been asserted earlier.

Opponents paid no price in this case for failing to seek review of their claims earlier. This Court had time to fully consider and reject all of Opponents' claims on their merits. Even with the best of efforts in the circuit and appellate courts, however, that may not always be possible.

**CONCLUSION**

For the reasons set forth above, this Court's September 10, 2024 order reversed the circuit court's judgment, and ordered the Secretary to take such steps as were needed to ensure Amendment 3 is put before the voters at the 2024 general election for their approval or disapproval.

_____
Paul C. Wilson, Judge

Russell, C.J., and Ransom, J., concur;
Powell, J., concurs in separate opinion filed;
Broniec, J., dissents in separate opinion filed; and
Fischer and Gooch, JJ., concur in separate
opinion of Broniec, J.



# SUPREME COURT OF MISSOURI
## en banc

MARY ELIZABETH ANNE COLEMAN, )
KATHLEEN ANNE FORCK, HANNAH )
SUE KELLY AND MARGUERITE )
ANN "PEGGY" FORREST, )
                       )
      Respondents, )
                       )
v.                       )     No. SC100742
                       )
JOHN R. ASHCROFT, )
                       )
      Respondent, )
                       )
AND                    )
                       )
MISSOURIANS FOR CONSTITUTIONAL )
FREEDOM AND ANNA FITZ-JAMES, )
                       )
      Intervenors-Appellants. )

## CONCURRING OPINION

I fully concur in the well-reasoned and thoughtful principal opinion. I write separately to focus on the interpretation of section 116.050 – an issue of first impression for this Court.[1] The principal opinion is correct that, when an initiative petition seeks to

---

[1] All statutory references are to RSMo 2016 unless otherwise indicated.

amend the constitution, section 116.050.2(2) applies only to constitutional provisions the proposed amendment would repeal and not statutes. The proposed constitutional amendment does not seek to repeal nor directly conflict with any constitutional provisions, so section 116.050 does not require removing the initiative petition from the ballot as the circuit court found. The principal opinion, therefore, properly reversed the circuit court's judgment. But it is also worth noting the circuit court erred in interpreting section 116.050 for another reason. The plain language of section 116.050 instructs an initiative petition proponent to identify only the constitutional or statutory text the petition explicitly seeks to repeal or modify, and *not* the constitutional or statutory provisions that may be invalidated or modified by implication as a result of the initiative petition.

The procedural requirements for initiative petitions are rooted in Missouri's constitution. In the hundred-plus years since the Missouri Constitution reserved to the people of this state the power to propose constitutional amendments by initiative petition, several different statutes have been enacted to provide guidance on how the constitutional procedural requirements should be applied. The statutory and constitutional requirements were once nearly identical, but the statutory requirements have evolved over time. As the principal opinion correctly notes, however, these statutory provisions cannot impose procedural requirements repugnant to or exceeding the requirements set forth in the constitution lest they be deemed unconstitutional.

Article III, section 50, the current source of the constitutional requirements, requires an initiative petition to contain "the full text of the measure." Similar to the constitution, section 126.041, RSMo 1978, the now-repealed precursor to section 116.050, required an

2

initiative petition to "contain a full and correct copy of the title and text of the measure so proposed by the initiative petition."  In 1980, the legislature repealed chapter 126 and enacted chapter 116 in its place.  Like its precursor, section 116.050, RSMo Supp. 1980, stated an initiative petition "shall contain a full and correct text of the proposed measure."

In 1997, the legislature repealed and replaced section 116.050, providing the statutory requirements for the initiative petition process in effect today.  The legislature added section 116.050.2 to specify what the "full and correct text" of an initiative petition include.  The text must:

> (1) Contain all matter which is to be deleted included in its proper place enclosed in brackets and all new matter shown underlined;
>
> (2) Include all sections of existing law or of the constitution which would be repealed by the measure; and
>
> (3) Otherwise conform to the provisions of **Article III, Section 28** and Article III, Section 50 of the Constitution and those of this chapter.

(Emphasis added).

Article III, section 28 of the Missouri Constitution governs the legislative process for enacting bills.  It states:

> No act shall be revived or reenacted unless it shall be set forth at length as if it were an original act.  No act shall be amended by providing that words be stricken out or inserted, but the words to be stricken out, or the words to be inserted, or the words to be stricken out and those inserted in lieu thereof, together with the act or section amended, shall be set forth in full as amended.

When the legislature amended section 116.050 in 1997 to include 116.050.2, the legislature instituted an initiative petition process that conforms with the legislative process for enacting bills found in article III, section 28.  The legislature, therefore, clearly intended

"the full text of the measure" incorporate the procedural requirements governing the enactment of a law by the legislature into the initiative petition process. As noted, the interpretation of section 116.050 as enacted in 1997 is an issue of first impression for this Court. Fortunately, this Court has provided significant guidance on compliance with article III, section 28, which is instructive as to how the reference to article III, section 28 impacts the interpretation and application of section 116.050 to the initiative petition process.

In *State ex rel. McNary v. Stussie*, 518 S.W.2d 630 (Mo. banc 1974), this Court applied and explained the mandates of article III, section 28. In *McNary*, the issue presented was whether a statute newly adopted by the legislature ("Act 70") had the effect of amending an already existing statute. *Id.* at 631. Act 70 sought to make a blanket change to the age of majority in the entire statutory code by stating "whenever the term 'twenty-one years of age' is used as a limiting or qualifying factor it shall be deemed to mean 'eighteen years of age[.]'" *Id.* Act 70 then authorized the revisor of statutes to "make the appropriate changes in the Revised Statutes of Missouri as they are revised, reenacted or reprinted." *Id.* This Court held Act 70 failed to comply with article III, section 28 because it effectively required specific words to be stricken out and others to be substituted without setting out which specific statutes the new law would, in fact, affect. *Id.* at 636. This Court reasoned, "Statutory amendments should set out the statute as amended and not leave us to guess as to whether and in what respect an existing statute was amended." *Id.* at 634. The constitution does not, however, require a proposed statute to list statutes it *may* affect, and this Court disfavors repeal by implication. *Id.* at 635.

4

This Court reiterated this point in *Boyd-Richardson Co. v. Leachman*, 615 S.W.2d 46, 53 (Mo. banc 1981), stating, "The fact that [a statute] has consequences for other statutes does not bring it into conflict with [article] III, [section] 28," and again in *Missouri Coalition for Environment v. State*, 593 S.W.3d 534, 544 (Mo. banc 2020), adding:

> The purpose of section 28 is not to make every new statute dozens or hundreds of pages long by reprinting every existing law that touches on the subject of the new legislation. Rather, the purpose of section 28 is to avoid confusion and to ensure the legislature knows the content and effect of the amended law.

Indeed, complying with article III, section 28, the legislature need not endeavor to "ferret out" and identify every statute or provision that could possibly be affected by the proposed enactment even if the proposed new law may impact an existing law. Nor does article III, section 28 require the legislature to set out every statute that might be "repealed" by implication. No, Missouri is a repeal and replace state. *See, e.g.*, *Mo. State Conf. of NAACP v. State*, 601 S.W.3d 241, 245 (Mo. banc 2020) ("SB 631 repeals and replaces section 115.277 . . . ."). Accordingly, when the legislature passes a bill, any provision the legislature *amends* is repealed and reenacted with the new language, and any provision the legislature *repeals* is removed in its entirety. To make clear to the public what it intends to do, the legislature brackets or strikes through the statutory language a bill proposes to repeal and underlines the language the legislature proposes to add or change. In addition, the bill title and enacting clause contain a specific list of the statutes to be repealed and the statutes to be enacted to replace those provisions.[2]

---

[2] For example, SB 754, which was enacted in 2024 by the legislature, contains this introductory enacting clause:

These are the procedures and provisions required by article III, section 28 and contained in the full text of bills. Legislative acts do not include an additional list of constitutional or statutory provisions that might in the future be deemed to have been repealed as an implication of the bill's passage or that directly conflict with the proposed legislation. Because section 116.050 explicitly imports the format of the legislature's bill enactment process into the initiative petition process by referencing article III, section 28, it follows that this is all section 116.050 requires for initiative petitions. Any other reading would be inconsistent with section 116.050's plain language; with article III, section 28; and with how legislation is normally enacted.

It is true that in *Buchanan v. Kirkpatrick*, 615 S.W.2d 6, 15 (Mo. banc 1981), this Court stated a proposed amendment must disclose the constitutional provisions on the initiative petitions that are in "direct conflict with or are irreconcilably repugnant to the [c]onstitution." This Court's decision in *Buchanan*, and, accordingly, all the cases *Buchanan* relied on, however, predated the legislature's 1997 amendment to section 116.050. As a result, the Court in *Buchanan* was interpreting only article III, section 50 and section 126.041, RSMo 1978. By adding section 116.050.2(2) and referencing article

Sections 211.031, 211.071, 217.345, 217.690, 547.031, 556.021, 558.016, 558.019, 568.045, 571.015, 571.070, 575.010, 575.353, 578.007, 578.022, 579.065, 579.068, 590.192, 590.653, 600.042, and 610.140, RSMo, are repealed and twenty nine new sections enacted in lieu thereof, to be known as sections 211.031, 211.071, 211.600, 217.345, 217.690, 307.018, 547.031, 547.500, 556.021, 558.016, 558.019, 565.258, 568.045, 571.015, 571.031, 571.070, 575.010, 575.151, 575.353, 578.007, 578.022, 579.021, 579.022, 579.065, 579.068, 590.192, 590.653, 600.042, and 610.140, to read as follows:

6

III, section 28, the legislature did not impose additional, unconstitutional restrictions on the people's power of initiative. Rather, the legislature made clear that proponents of an initiative petition need include only the provisions of the constitution that would be repealed by the proposed amendment – not those provisions that are merely in direct conflict. Here, the initiative petition for Amendment 3 complied with the requirements of section 116.050. The initiative petition set forth the full text of the measure and identified the constitutional provision it was specifically revising, the same way a legislative bill would. Amendment 3 did not propose to repeal any specific constitutional or statutory provision and did not speculate as to what provisions of law the new constitutional provision may directly or implicitly affect, which is exactly how a legislative act would propose changing Missouri law.

The circuit court erroneously read section 116.050 to impose an additional requirement on initiative petitions. Under the circuit court's reading, section 116.050 would require initiative petitions to list all statutory provisions that *might* be deemed incompatible with the measure if enacted. But, as explained above, this is not a requirement imposed on legislative bills, nor is it something the legislature ever does. Given that section 116.050 expressly directs initiative petition proponents to follow the same process as the legislature – both by requiring initiative petitions to have bracketed or underlined changes and by requiring compliance with article III, section 28 – there is no basis for reading such a requirement into the statute.

Reading section 116.050 to require initiative petition proponents to do more than the legislature must do to enact laws may also be unconstitutional as an undue burden on

7

the right to pursue an initiative petition. As the principal opinion notes, if section 116.050.2(2) requires an initiative petition to set forth statutes and constitutional provisions that courts may later deem the proposed initiative invalidated or modified, proponents of the initiative would be forced to comb through our voluminous constitution and revised Missouri statutes in search of every provision that may be implicated by the proposed change in law. Article III, section 28 does not require the legislature to take this extraordinary step, and if such requirements were imposed on the initiative process, it most certainly would unduly burden the right to pursue an initiative petition.

The Court should not interpret section 116.050 to create constitutional problems. Rather, as the principal opinion properly determined, this Court should interpret and apply section 116.050 per its plain language and context to require a proposed constitutional amendment to include only other sections of the constitution it would repeal. Moreover, the plain language of section 116.050 does not require initiative petitions to identify constitutional or statutory provisions that may be invalidated or modified as a result of the initiative, and an initiative petition need identify only the constitutional or statutory text the petition explicitly seeks to repeal or modify. Because the proposed constitutional amendment in this case does not seek to repeal other provisions of the constitution, the procedural requirements of the initiative petition process were met. For these reasons, I fully concur in the principal opinion, and the circuit court's judgment should be reversed.

_____
W. Brent Powell, Judge

8



## SUPREME COURT OF MISSOURI
### en banc

MARY ELIZABETH ANNE COLEMAN, )
KATHLEEN ANNE FORCK, HANNAH )
SUE KELLY AND MARGUERITE )
ANN "PEGGY" FORREST, )
                      )
    Respondents, )
                        )
v. )     No. SC100742
                        )
JOHN R. ASHCROFT, )
                        )
    Respondent, )
                        )
AND )
                        )
MISSOURIANS FOR CONSTITUTIONAL )
FREEDOM AND ANNA FITZ-JAMES, )
                        )
    Intervenors-Appellants. )

### DISSENTING OPINION

I respectfully dissent. As a preliminary matter, I agree with the principal opinion: this case is not about abortion. This opinion does not intend to make any statement about the merits of Initiative Petition 2024-086 ("Amendment 3"). Instead, this case is about the purely legal issues of whether Amendment 3 had to comply with section 116.050 and,

if so, whether it complied.[1]  Because Amendment 3 had to follow Missouri law as set out in section 116.050 and did not do so, I would affirm the circuit court's judgment.[2]

"Because the case was submitted on stipulated facts entered into between the parties in the proceedings before the circuit court, '[t]he only question before us is whether the trial court made the proper legal conclusion from the stipulated facts.'"  *Cady v. Ashcroft*, 606 S.W.3d 659, 665 (Mo. App. 2020) (alteration in original) (quoting *Mo. Elec. Coops. v. Kander*, 497 S.W.3d 905, 910 (Mo. App. 2016)).  Our review, therefore, is *de novo*, and this Court should affirm the circuit court's judgment if it is correct on any ground supported by the record.  *Id.*

"When courts are called upon to intervene in the initiative process, they must act with restraint, trepidation, and a healthy suspicion of the partisan who would use the judiciary to prevent the initiative process from taking its course."  *Brown v. Carnahan*, 370 S.W.3d 637, 669 (Mo. banc 2012) (Fischer, J., concurring) (internal quotation omitted).  "Judicial intervention is not an appropriate substitute for the give and take of the political process."  *Id.* at 669 (internal quotation omitted).  "As such, when initiative petitions are challenged, this Court's primary duty is to determine whether the constitutional requirements and limits of power, as expressed in the provisions relating to the procedure and form of initiative petitions, have been regarded."  *Id.* at 645.

---

[1] All statutory references are to RSMo 2016.
[2] Because I would affirm the circuit court's judgment as to Count I, I would not reach Appellants' other, alternate counts.

In article III, section 49 of the Missouri Constitution, Missouri citizens reserved unto themselves the "power to propose and enact or reject laws and amendments to the constitution by the initiative, independent of the general assembly[.]" In article III, section 50 of the Missouri Constitution, Missouri citizens also set out certain procedures governing all initiative petitions "proposing amendments to the constitution," as Amendment 3 does. One of the requirements of article III, section 50 is that each initiative petition "shall contain … the full text of the measure." As relevant here, section 116.050.2(2) provides: "The full and correct text of all initiative and referendum petition measures shall … [i]nclude all sections of existing law or of the constitution which would be repealed by the measure[.]" Whether the requirements of section 116.050.2(2) are mandatory is not an issue of first impression. This Court has held previously: "Before an initiative petition appears on the ballot, the requirements of chapter 116 must be met." *Brown*, 370 S.W.3d at 645.[3]

The provisions in section 116.050.2 are not merely superfluous. They are not merely suggestions. They are Missouri law, and they are presumed constitutional. *Id.* at 647. As the Court has long held, the requirements of chapter 116 must be met before an initiative petition is placed on the ballot. Even the principal opinion declined to declare section 116.050 unconstitutional. The issue then becomes whether Amendment 3 satisfies the requirements of chapter 116.

---

[3] While it is true that "[s]tatutes that place impediments on the initiative power that are inconsistent with the reservation found in the language of the constitution will be declared unconstitutional," there is nothing in section 116.050 that is inconsistent with the constitution. *Brown*, 370 S.W.3d at 646.

3

As Appellants and Respondents acknowledge, this case presents an issue of first impression. Until now, no party has asked the Court to decide whether the phrase "all sections of existing law or of the constitution which would be repealed by the measure" requires an initiative petition proposing a constitutional amendment to include statutes and constitutional provisions that would be repealed by the constitutional amendment. Instead, in the few cases this Court has decided concerning the "full text" requirement of article III, section 50 or section 116.050.2(2), the parties have argued only that a proposed constitutional amendment has not listed all constitutional provisions that would be repealed by the amendment or that a proposed statutory amendment has not listed all statutory provisions that would be repealed by the statutory amendment. *See, e.g.*, *Earth Island Inst. v. Union Elec. Co.*, 456 S.W.3d 27, 30 (Mo. banc 2015); *Buchanan v. Kirkpatrick*, 615 S.W.2d 6, 15 (Mo. banc 1981); *Moore v. Brown*, 165 S.W.2d 657, 661 (Mo. banc 1942); *State ex rel. Halliburton v. Roach*, 130 S.W. 689, 695 (Mo. banc 1910). Here, Respondents have argued Amendment 3 violates section 116.050.2(2) because it fails to list both constitutional provisions and statutes that would be repealed if voters approve Amendment 3.

That no party has raised this issue previously does not mean it lacks merit. This Court considers issues of first impression routinely. And, as the circuit court appropriately noted, other citizens have interpreted section 116.050.2(2) as requiring that an initiative petition proposing a constitutional amendment must disclose both statutes and constitutional provisions that would be repealed by the amendment, and those citizens "had no reason other than compliance with [s]ection 116.050 [] and Article III,

4

[s]ection 50, to inform potential signers of the enormously broad impacts, both direct and implied, of their proposed measures." As the circuit court noted, IP 2018-048 ("Clean Missouri") (enacted in 2018 as Amendment 1) included in the "full and correct text" the following statutes and constitutional provisions that would be repealed:

> NOTICE: You are advised that the proposed constitutional amendment may change, repeal, or modify by implication or may be construed by some persons to change, repeal or modify by implication, the following Articles and Sections of the Constitution of Missouri: Article I, Section 8 and the following Sections of the Missouri Revised Statutes: Sections 105.450 through 105.496 and Sections 130.011 through 130.160. The proposed amendment revises Article III of the Constitution by amending Sections 2, 5, 7, and 19 and adopting three new sections to be known as Article III Sections 3, 20(c), and 20(d).

Chapter 116 does not define "repeal" or "repealed." When there is no statutory definition of a term, the plain meaning governs. *Sun Aviation, Inc. v. L-3 Commc'ns Avionics Sys., Inc.*, 533 S.W.3d 720, 723 (Mo. banc 2017). The principal opinion quotes *Knight v. Carnahan*, 282 S.W.3d 9, 18-19 (Mo. App. 2009), which set out a definition of "repeal" from *Black's Law Dictionary* (6th ed. 1990), to suggest only statutes can be repealed. But the definition of "repeal" is not so narrow. The same edition of *Black's Law Dictionary* also defined "repeal" as "[t]o revoke, abolish, annul, to rescind or abrogate by authority." The current version of *Black's Law Dictionary* defines "repeal" as "[t]o authoritatively abrogate, rescind, or annul (a statute, ordinance, or other legal instrument); to effectively render invalid." *Repeal*, Black's Law Dictionary (12th ed. 2024). *Black's Law Dictionary* does not aid the principal opinion's assertion that only a statute can be repealed. Other dictionary definitions of "repeal" are even broader. For example, the *Cambridge English Dictionary* defines repeal as "the act of removing the

5

legal force of a law." https://dictionary.cambridge.org/us, last accessed Sept. 18, 2024.

Further, reliance on a dictionary definition of "repeal" is unnecessary given this Court's precedent recognizing that a constitutional provision may repeal a statute as a matter of law. In *Marsh v. Bartlett*, 121 S.W.2d 737 (Mo. banc 1938), the Court considered whether a constitutional amendment proposed by initiative petition and adopted by vote of Missouri citizens *repealed* existing statutes, and the Court properly concluded it did:

> [A] statute may be nullified, in so far as future operation is concerned, by a constitution or a constitutional amendment as well as by statute; and the constitution or the amendment, as the highest and most recent expression of the lawmaking power, operates to repeal, not only all statutes that are expressly enumerated as repealed but also all that are inconsistent with the full operation of its provisions.

*Id.* at 745.

The principal opinion has multiple explanations for why *Marsh* is irrelevant here, and, of course, it must attempt to distinguish *Marsh* because *Marsh* plainly contemplates that a constitutional amendment may repeal a statute, which is consistent with the dictionary definitions of "repeal" quoted above. *Marsh* is plain and is contrary to the principal opinion's position.

The principal opinion's construction of section 116.050.2(2) as requiring a proposed constitutional amendment identify *only* those constitutional provisions that would be repealed by the amendment does not give effect to the plain language of the statute, improperly reads the word "only" into the statute, and does not give effect to every word in the statute. "All provisions of a statute must be harmonized and every word, clause, sentence, and section thereof must be given some meaning." *State v. Knox*,

6

604 S.W.3d 316, 322 (Mo. banc 2020) (alterations and internal quotation omitted). Further, the General Assembly is presumed to legislate with knowledge of this Court's case law. *State ex rel. Nothum v. Walsh*, 380 S.W.3d 557, 567 (Mo. banc 2012) (quoting *Greenbriar Hills Country Club v. Dir. of Revenue*, 47 S.W.3d 346, 352 (Mo. banc 2001)). The principal opinion focuses on the word "or" and asserts the General Assembly would have used "and" had it intended initiative petitions to include both constitutional provisions and statutes to be repealed, but the difficulty with this interpretation is that one could read it to require no listing of provisions to be repealed if both constitutional provisions and statutes are not repealed because there might be one or the other but not both. The General Assembly correctly used "or" to account for this potential problem. The principal opinion improperly reads an entire phrase, "all sections of existing law[,]" out of section 116.050.2(2). The principal opinion also reads "repeal" out of section 116.050.2(2) because, under the principal opinion's interpretation, the General Assembly must not have meant to use "which would be repealed by the measure" because, under the principal opinion's analysis, a constitutional provision can never be "repealed," even by a directly contradictory constitutional provision.

"The goal of statutory interpretation is to give effect to the General Assembly's intent as reflected in the plain language of the statute at issue." *State ex rel. Fitz-James v. Bailey*, 670 S.W.3d 1, 6 (Mo. banc 2023) (internal quotation omitted). This Court avoids interpretations producing "unreasonable or absurd results." *Id.* (internal quotation omitted). The principal opinion leads to the absurd result here—that an initiative petition proposing a constitutional amendment can directly conflict with multiple existing

7

statutes—and appear on the ballot with a ballot summary indicating it "removes" existing law—without ever indicating to signers that existing law is being changed in any way.[4] The principal opinion does not dispute that a direct conflict exists but, nonetheless, concludes Amendment 3 did not need to indicate this direct conflict in any way to petition signers despite the plain language of section 116.050.2(2). This is an absurd result contrary to the plain language in section 116.050.2(2).

A constitutional provision can repeal a statute, and the principal opinion's conclusion to the contrary is in error and does not honor the General Assembly's obvious intent in section 116.050.2(2) of informing signers of **all** laws to be repealed, statutes and constitutional provisions, by the proposed constitutional amendment.[5] Further, the principal opinion's interpretation does not give full effect to article III, section 49, which unambiguously reserves in the people of Missouri the power to use the initiative process to "reject laws and amendments … independent of the general assembly." The Missouri Constitution does not state citizens must wait for the General Assembly or the courts to take further action. The principal opinion's construction to the contrary conflicts with another provision of the Missouri Constitution, article III, section 51, which provides:

---

[4] The ballot summary language for Amendment 3 contains a provision that Amendment 3 "removes Missouri's ban on abortion."

[5] The principal opinion suggests compliance with section 116.050.2(2) is unnecessary because any disclaimer "simply regurgitates a list of statute numbers that mean nothing unless one has ready access to the text of those statutes, which Missourians considering a petition on some street corner somewhere do not." However, section 116.050.2(2), enacted by our General Assembly, serves the important purpose of alerting signers that the proposed amendment repeals current law(s), so they can investigate further if they choose, instead of, as here, improperly suggesting to signers that the proposed amendment is entirely new and not in direct conflict with existing law.

8

"Except as provided in this constitution, any measure proposed shall take effect when approved by a majority of the votes cast thereon."

For the reasons set out above, Amendment 3 had to comply with section 116.050.2(2) by including "all sections of existing law or of the constitution which would be repealed by the measure." This Court has held "the makers of an initiative petition [are not required] to 'ferret out' and to list all the provisions which could possibly or by implication be modified by the proposed amendment." *Buchanan*, 615 S.W.2d at 15. Instead, they must "list provisions which would be in direct conflict. This is a reasonable requirement because it would succeed in substantially bringing out the effect of the proposed amendment without placing an excessive burden on those seeking change by way of the initiative." *Id.*

It is readily apparent Amendment 3 contains provisions in "direct conflict" with existing statutes. For example, section 188.017.2, RSMo Supp. 2019, states in pertinent part: "Notwithstanding any other provision of law to the contrary, no abortion shall be performed or induced upon a woman, except in cases of medical emergency." In contrast, Amendment 3 states:

> [T]he General Assembly may enact laws that regulate the provision of abortion after Fetal Viability provided that under no circumstance shall the Government deny, interfere with, delay, or otherwise restrict an action that in the good faith judgment of a treating health care professional is needed to protect the life or physical or mental health of the pregnant person.

These provisions are in direct conflict such that Amendment 3, if passed, will repeal section 188.017.2, RSMo Supp. 2019. Section 188.015(12), RSMo Supp. 2024, defines "viability" as "that stage of fetal development when the life of the unborn child may be

9

continued indefinitely outside the womb *by natural or artificial life-supportive systems*."
(Emphasis added). Amendment 3 defines "fetal viability" as "the point in pregnancy
when, *in the good faith judgment* of a treating health care professional and *based on the
particular facts of the case*, there is *significant likelihood* of the fetus's sustained survival
outside the uterus *without the application of extraordinary medical measures*."
(Emphasis added to indicate contradiction). These definitions are disparate and cannot
exist at the same time. Therefore, Amendment 3, if passed, will repeal section
188.015(12), RSMo Supp. 2024. In addition, section 188.028, RSMo Supp. 2019,
regarding parental consent for minors, and section 188.039, RSMo Supp. 2017, the
72-hour waiting period, directly conflict with Amendment 3. Section 188.028.1(1),
RSMo Supp. 2019, prohibits a medical provider from performing an abortion on a minor,
except in the case of medical emergency, without securing the informed written consent
of at least one parent or guardian. This section additionally requires that any custodial
parent other than the consenting parent be informed, unless an exception applies. *Id.*
Amendment 3 prohibits government infringement "upon a person's fundamental right to
reproductive freedom," which includes "the right to make and carry out decisions about
… abortion care." The usage of the broad word "person" makes no exception for minors.
Therefore, Amendment 3 directly conflicts with section 188.028.1(1)'s parental consent
requirement and will impliedly repeal that section, if passed. Further, section 188.039.2,
RSMo Supp. 2017, prohibits a physician from performing an abortion until 72 hours after
the physician has conferred with the patient regarding various required topics. This

10

directly conflicts with Amendment 3, which states the right to reproductive freedom "shall not be denied, interfered with, delayed, or otherwise restricted."[6]

These are but a few examples of statutes that Amendment 3 would repeal if approved. While proponents of initiative petitions proposing constitutional amendments are not required to "ferret out" all constitutional provisions and statutes that might be affected by the proposed amendment, they must disclose those in "direct conflict" with the proposed amendment that "would be repealed by the measure." *Buchanan*, 615 S.W.2d at 15; sec. 116.050.2(2). Plainly Amendment 3 does not comply with section 116.050.2(2) as it does not include *any* statute or constitutional provision that Amendment 3 would repeal despite multiple direct conflicts, including the examples above. Amendment 3's "full and correct text" advises voters of no changes it makes to existing Missouri law.[7] And this Court need not speculate as to whether the failure to include those statutes in direct conflict with Amendment 3 as part of the "full and correct text" resulted in prejudice or harm to any signer, as an Amendment 3 signer filed an amicus brief with this Court stating she would not have signed Amendment 3 if it had disclosed which laws Amendment 3 would repeal if passed.

---

[6] The circuit court also correctly noted other direct conflicts between Amendment 3 and section 188.017.2, RSMo Supp. 2019.

[7] Appellants assert requiring them to list every statute Amendment 3 would impact would be overly burdensome to them and confusing to voters. To be clear, the test articulated by this Court is in "direct conflict." And because Amendment 3 failed to include *any* statute in direct conflict with it, this Court is not presented with the question in this case of whether something less than disclosure of all statutes in direct conflict with the initiative petition would be sufficient.

It is also worth noting that, while this case involves an issue of first impression, the arguments Appellants raised supporting placing Amendment 3 on the ballot are not new. In *State ex rel. Scott v. Kirkpatrick*, 484 S.W.2d 161, 163-65 (Mo. banc 1972), the Court upheld the secretary of state's rejection of an initiative petition for filing and certification when the petition did not have an enacting clause, as required by article III, section 50 of the Missouri Constitution. There, the Court appropriately rejected, as irrelevant to the legal issues before it, arguments the same as those Appellants raise supporting Amendment 3. *Id.* at 165. Appellants argue section 116.050.2(2) is a mere matter of form or a technicality. The Court in *Scott* rejected the argument that failure to include the enacting clause was a mere technicality. *Id.* at 162-63. Appellants argue the decision to sign or not sign the initiative petition was not affected by any lack of compliance with section 116.050.2(2). The Court rejected this argument in *Scott*, noting: "Such an assumption can be based only on speculation and conjecture and may be true or false. … If we were to accept the argument as made, we would be in the untenable position of disregarding the unambiguous and clearly delineated provisions of the section in question." *Id.* at 164. Appellants also argue the Court should not disregard the will of more than 300,000 signers of Amendment 3. This Court again considered and rejected this argument in *Scott*, when proponents of that initiative petition asserted "the desire of a large number of Missouri citizens (approximately 160,000) should not be subverted by the lack of a technical introduction." *Id.* The Court noted this:

> is not truly a legitimate legal argument" and noted "courts have done far more harm and injustice by judicial legislation—that is, by interpolating into statutes and Constitutions words and phrases which the lawmakers never

12

placed therein, and by striking therefrom words and phrases which were placed there by the lawmakers—than they have by clinging to the so-called technicalities.

*Id.* The Court also concluded:

whether or not we 'subvert' the desires of the signers of the challenged petitions, regardless of their number, turns on the desires of all of the people of this state, regardless of their number, as expressed in their constitution which declares the fundamental law and which we are bound to follow. We have no other alternative.

*Id.* at 165. *Scott* was decided correctly and has not been overruled or limited by the Court in the more than 50 years since it was decided.

Because Amendment 3 had to comply with section 116.050.2(2) by including "all sections of existing law or of the constitution which would be repealed by the measure," and Amendment 3 did not do so when it included ***no*** statutes or constitutional provisions that would be repealed, I would affirm the circuit court's judgment.

_____

KELLY C. BRONIEC, JUDGE

13